864 F.2d 271
 110 A.L.R.Fed. 669
 UNITED STATES of America
v.
Vincent Di PASQUALE, Appellant in 86-5810.
UNITED STATES of America
v.
Di NORSCIO, Giacomo, Appellant in 86-5835 & 87-5284.
UNITED STATES of America
v.
COHEN, Gerald, Appellant in 86-5841 & 87-5285.
UNITED STATES of America
v.
DELUCA, Gerald, Appellant in 86-5836 & 87-5286.
UNITED STATES of America
v.
SINICO, John, Appellant in 86-5875 & 87-5288.
UNITED STATES of America
v.
TRUGLIA, Anthony, Appellant in 86-5886 & 87-5317.
 Nos. 86-5810, 86-5835, 86-5836, 86-5841, 86-5875, 86-5886,
87-5284, 87-5285, 87-5286, 87-5288 and 87-5317.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 11, 1988.
Decided Dec. 23, 1988.
 
 John A. Moore, Moore & Kealy, Jersey City, N.J., for appellant in 86-5810.
 Kirk W. Munroe (Argued), Richey & Munroe, P.A., Miami, Fla., for appellant in 87-5284.
 Thomas R. Ashley (Argued), Ashley and Charles, Newark, N.J., for appellant in 86-5841 & 87-5285.
 Thomas Cammarata (Argued), Jersey City, N.J., for appellant in 86-5836 & 87-5286.
 Andrew K. Ruotolo (Argued), DiRienzo & Ruotolo, P.A., Westfield, N.J., for appellant in 86-5875 & 87-5288.
 Garry J. Furnari (Argued), Law Office of Garry J. Furnari, Nutley, N.J., for appellant in 86-5886 & 87-5317.
 Edna Ball Axelrod (Argued), Chief, Appeals Div., U.S. Attys. Office, Newark, N.J., for appellee.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and SHAPIRO, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 These consolidated appeals are brought by six co-defendants from judgments of conviction and sentence on charges arising from a conspiracy to distribute narcotics. Appellants Giacomo Di Norscio, Gerald Cohen, Gerald Deluca, John Sinico, Anthony Truglia and Vincent Di Pasquale, assert several and various contentions of error in the district court's conduct of their trial and imposition of sentence. They assert, inter alia, that the district court erred by refusing to grant a motion for an evidentiary hearing to determine whether the government had impermissibly utilized its peremptory challenges during voir dire to exclude a cognizable ethnic group; that the district court erred by refusing to grant a motion for recusal; that the district court erred by its imposition of an enhanced sentence pursuant to the federal statute that provides for increased penalties for persons convicted of an offense committed while on bail for a separate offense; and finally, that the district court erred by refusing to dismiss the indictment because the charging grand jury did not fairly represent a cross-section of the community.[1] We find each of these contentions without merit and, accordingly, we will affirm the district court's judgments of conviction and sentence.[2]
 
 I.
 Background
 
 2
 Appellants were charged, in a six-count indictment returned in June 1986, with participation in a conspiracy to distribute cocaine between several states during the period between September 1985 and June 1986. Specifically, the indictment alleged that the appellants, together with five co-defendants[3], conspired to distribute cocaine from a base in Florida to New Jersey and several other states; possessed and aided and abetted the possession of cocaine with the intent to distribute it; and that, in pursuit of the conspiracy, two of the appellants--Di Norscio and Cohen--engaged in a continuing criminal enterprise as the principal administrators and organizers of the illicit conspiracy. The principal evidence of the conspiracy was presented through the testimony of three witnesses: William Hawley, Gregory Hamilton, and Robert Fisher, each of whom observed and participated in some aspects of the illegal transactions.[4]
 
 
 3
 The trial of these charges commenced in September 1986 and resulted in the conviction of each appellant for participation in the conspiracy and for possession with the intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 (1982).[5] Additionally, the jury found Di Norscio and Cohen guilty of the continuing criminal enterprise charge, which involved felony violations of subchapters I and II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. Sec. 848 (Supp. IV 1986)[6], and found Di Norscio and De Luca guilty of possession with the intent to distribute a controlled substance in violation of 21 U.S.C. Sec. 841(a)(1)(1982).[7]
 
 
 4
 Pursuant to these verdicts, the district court sentenced Di Norscio to two concurrent twenty-five year prison terms, a six year special parole term, and a $5,000 fine. It also imposed a consecutive five year term pursuant to 18 U.S.C. Sec. 3147 (Supp. IV 1986) ("Sec. 3147").[8] The district court sentenced Cohen to a twenty-five year prison term and to a consecutive five year term under Sec. 3147. DeLuca was sentenced to concurrent terms of seventeen and ten years and to a three year special parole term. He was also sentenced to a consecutive term, under Sec. 3147, of three years. The district court sentenced Sinico to a seven year prison term, Truglia to a ten year prison term and DiPasquale to a fifteen year prison term, to be served concurrently with a term that he was serving as the result of a prior conviction.
 
 
 5
 Following the entry of judgments of convictions and sentences, the appellants timely filed notices of appeal alleging error in the conduct of their trial. They assert: (1) that the government improperly exercised its peremptory challenges to exclude Italian-Americans from the petit jury in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) that the district court erred by failing to grant a motion for recusal pursuant to 28 U.S.C. Sec. 455(a), (b)(1), and (b)(3) (1982); (3) that the district court improperly enhanced their sentences under Sec. 3147; and (4) that the grand jury selection process systematically excluded Blacks, Hispanic-Americans and persons with less than high school educations, in violation of the sixth and fourteenth amendments and the Jury Selection and Service Act of 1968, ("Jury Selection Act"), 28 U.S.C. Sec. 1861 et seq. (1982). We have reviewed these contentions and find none of them sufficient to warrant intrusion upon the judgments of the district court. We will, therefore, affirm.
 
 II.
 
 6
 Exclusion of Italian-Americans From the Petit Jury
 
 
 7
 Di Norscio contends that, during the selection of the jury, the government exercised five peremptory challenges against venire persons with Italian surnames for the purpose of excluding Italian-Americans from the jury. Di Norscio argues that the government's use of peremptory challenges in that manner violated his right to equal protection, as set forth in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Di Norscio moved for a hearing under Batson to require the government to put forward a "neutral explanation," id. at 97, 106 S.Ct. at 1723, for challenging the jurors and the district court reserved judgment on the motion pending the completion of the voir dire. The jury selection process was completed resulting in the selection of two jurors who had Italian surnames.
 
 
 8
 Immediately following the jury selection, the district court denied Di Norscio's application for a Batson hearing. It concluded that the Batson rule is explicitly limited to racial discrimination against blacks and, thus, did not extend to Italian-Americans. United States v. Di Norscio, et al., No. 86-223, Trans. of Proceedings (Opinion) at 271 (D.N.J. Sept. 11, 1986), reprinted in Appellants' App. at 271. Significantly, however, it found regarding two of the challenged jurors, that permissible grounds for exclusion existed, and concluded that even if it read Batson to extend beyond black Americans, Di Norscio had not made the requisite factual showing of the cognizability of the group that he alleges to have been excluded, or that any group was actually excluded. The district court stated its finding that "[Di Norscio's] application [for a Batson hearing] is bottomed on nothing--on utterly nothing either factual or legal." Id. at 274.
 
 
 9
 We need not consider the correctness of the district court's determination that the rule of Batson is not applicable to cognizable racial or ethnic groups other than black Americans under any circumstances because we conclude that the district court's decision not to exercise its discretion and order a Batson hearing--on the facts of this case--did not constitute reversible error.[9] Accordingly, we will not disturb the district court's judgment.[10]
 
 
 10
 Under Batson, to establish a prima facie case of purposeful discrimination in the selection of the petit jury, a
 
 
 11
 defendant must first show that he [or she] is a member of a cognizable racial group, Castaneda v. Partida, ... [430 U.S.] at 494 [97 S.Ct. at 1280], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, 345 U.S. at 562 [73 S.Ct. 891, at 892, 97 L.Ed. 1244 (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire[persons] from the petit jury on account of their race.
 
 
 12
 Batson, 476 U.S. at 96, 106 S.Ct. at 1723. We assume arguendo that the holding of Batson is not limited to black Americans, and applies to any ethnic or racial group that meets the criteria of cognizability delineated by the Supreme Court. In that light, we note that
 
 
 13
 [t]he defendant initially must show that he is a member of a racial group capable of being singled out for differential treatment ... a defendant may then make a prima facie case by proving that in the particular jurisdiction members of his race have not been summoned for jury service over an extended period of time.
 
 
 14
 Id. at 94, 106 S.Ct. at 1722 (citing Castaneda v. Partida, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)). In the present case, therefore, under Batson, Di Norscio was required to show that persons with Italian surnames--the group that he has identified as impermissibly excluded from his jury--constitute a group that has been singled out for differential treatment and has been disparately represented on juries in New Jersey.
 
 
 15
 In our evaluation of factors that must be shown in order to demonstrate the cognizability of a racial or ethnic group, we take some guidance from a decision of the Court of Appeals for the First Circuit. In United States v. Sgro, 816 F.2d 30 (1st Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988), that appellate court noted that:
 
 
 16
 [t]he proponent must prove that (1) the group must be definable and limited by some clearly identifiable factor, (2) a common thread of attitudes, ideas or experiences must run through the group, and (3) there must exist a community of interests among the members, such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process.
 
 
 17
 Sgro, 816 F.2d at 33. We refer to these factors to illustrate the nature of the showing required of Di Norscio and the insufficiency of the proof presented by him on the question of cognizability. Di Norscio offered no evidence from which the district court could reasonably have found that persons with Italian surnames are reliably identified as members of a single ethnic descent, or that persons with such surnames "either have been or are currently subjected to discriminatory treatment," United States v. Bucci, 839 F.2d 825, 833 (1st Cir.1988). See also, United States v. Angiulo, 847 F.2d 956, 984 (1st Cir.1988). Indeed, during voir dire, Di Norscio himself conceded that "it's impossible to tell by the names" which jurors are Italian-Americans. Appellants' App. at 3540. Significantly, he presented no evidence, other than the surnames, to establish the ethnicity of the challenged jurors. During Di Norscio's oral motion for a Batson hearing, the district court stated its belief that "the record also would reflect that no one here knows whether these people are truly Italian-Americans or not, and [that] it's speculation at best on behalf of defense counsel." Appellants' App. at 3543.
 
 
 18
 Moreover, Di Norscio has not demonstrated that persons with Italian surnames--even if they do not share Italian descent--are themselves an identifiable ethnic group that shares common backgrounds and ideas linked to a single culture and group loyalties, or that there exists among them a community of interests "such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process." Sgro, 816 F.2d at 33. He has not made a showing that this group has been systematically excluded from jury service in New Jersey and, perhaps most significantly, he does not demonstrate the actual prejudice to him in the constitution of his jury, which included two jurors who have Italian surnames. For these reasons, we conclude that Di Norscio has failed to carry his burden of demonstrating that a cognizable group for Batson purposes was impermissibly excluded from his jury and, therefore, we conclude that he has failed to establish a prima facie case of discrimination in the government's use of its peremptory challenges.
 
 III.
 Denial of the Motion for Recusal
 
 19
 At the time the indictment underlying this appeal was returned, Di Norscio was awaiting trial on a separate criminal indictment, also returned in the District Court for New Jersey, in United States v. Accetturo. One count of the indictment in Accetturo charged Di Norscio with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846 and Sec. 841(a)(1) (1982). The conspiracy charged in that case was alleged to have existed between September 1982 and July 1985. After his arrest in Accetturo, Di Norscio was released on bail. During the period of that release, Di Norscio was indicted in the instant case. Di Norscio contends that the interrelationship between these prosecutions mandated recusal by the trial judge under 28 U.S.C. Secs. 455(a), (b)(1) and (b)(3) (1982).[11] He contends that the Di Norscio and Accetturo cases were actually separate prosecutions of a single conspiracy and, because the district judge in the present case served in the United States Attorney's office during the time that the Accetturo investigation was in progress, it was improper for her to preside over the trial of the case underlying this appeal.
 
 
 20
 Judge Barry denied all defense motions to recuse, on the grounds that: (1) the conspiracy charged in the case before her and the conspiracy charged in the Accetturo case were separate conspiracies; (2) she had no previous knowledge of the Di Norscio case and had never been involved in any aspect of the prosecution of this case while she was in the U.S. Attorney's office and; (3) she had no actual bias against the defendants and no reasonable person would question her impartiality. We review the district court's decision not to grant the motion for recusal for abuse of discretion, see United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983), and we will affirm.
 
 
 21
 Di Norscio contends that recusal was necessary because Judge Barry served as a Supervisory Assistant U.S. Attorney in the District of New Jersey through November 1983. Di Norscio argues that recusal was mandated by 28 U.S.C. Sec. 455(b)(3), because the judge "served in governmental employment and in such capacity participated as counsel, advisor or material witness ... or expressed an opinion concerning the merits of the ... case." Section 455(b)(3), however, mandates withdrawal only when "the judge is asked to hear the same case in which [he or she] has been of counsel...." In re Grand Jury Investigation, 486 F.2d 1013, 1015 (3d Cir.1973) (emphasis in original) cert. denied sub nom. Testa v. United States, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974). In the present case, the district judge explicitly stated that she never participated as counsel or advisor, or expressed any opinion concerning Di Norscio's case. We note that the indictment in this case charges acts that began in September 1985, nearly two years after the Judge Barry left the U.S. Attorney's Office.
 
 
 22
 The district court found that the conspiracy charged in the Accetturo case terminated at the time of the appellants' indictments in that case in August 1985. It held, therefore, that the conspiracy underlying the indictment in the present case--which alleged acts that succeeded the appellants' arrests in Accetturo --was separate from the conspiracy underlying the indictment in Accetturo. We are not persuaded that that factual finding was clearly erroneous.
 
 
 23
 Even if we accepted Di Norscio's contention that the conspiracy charged in this case arises from the same factual circumstances as the conspiracy charged in Accetturo, however, recusal was not required under Sec. 455(b)(3). Although, as Di Norscio asserts, the United States Attorney is "of counsel" in all criminal prosecutions within his or her district, see e.g., In re Grand Jury Investigation, 486 F.2d at 1015; United States v. Vasilick, 160 F.2d 631, 632 (3d Cir.1947), Di Norscio offers no compelling argument for extending this per se "of counsel" rule to cover every judge who has previously worked as a supervisory attorney in the U.S. Attorney's Office. In our view, absent a specific showing that that judge was previously involved with a case while in the U.S. Attorney's office that he or she is later assigned to preside over as a judge, Sec. 455(b)(3) does not mandate recusal. In the present case, therefore, we decline to hold that the trial judge's position as a Supervisory Assistant U.S. Attorney made her "of counsel" in either the Accetturo prosecution or the present case. In light of that conclusion, and because there is no evidence that she otherwise participated in the investigation or the prosecution of the present case or of Accetturo, we hold that the trial judge did not abuse her discretion by denying the motion for recusal under Sec. 455(b)(3).
 
 
 24
 Recusal was also not mandated under either Sec. 455(a), Sec. 455(b)(1). Apart from the allegation concerning the trial judge's prior employment as Assistant U.S. Attorney, Di Norscio presents no evidence of bias, prejudice or improper motive that Judge Barry harbored with regard to Di Norscio's case. He does not offer evidence to refute the trial judge's statement that she had "no personal knowledge of any evidentiary facts concerning this case," Appellants' App. at 3262-63, nor did he offer any evidence tending to show that "a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (construing Sec. 455(a)). As we have discussed above, he has not shown that the district judge had prior involvement in the prosecution of his case, or that she had any improper connection with the defendants, prosecutors, witnesses or any one else involved with this trial. On this record, we are not persuaded that trial judge's impartiality was in doubt and, therefore, we find no abuse of discretion in the denial of the motion to recuse.
 
 IV.
 
 25
 Enhancement of Sentence Pursuant to Sec. 3147
 
 
 26
 We next review the claim that Di Norscio was sentenced illegally under Sec. 3147. Di Norscio claims that Sec. 3147 establishes a criminal offense. He argues that, because he was not indicted, tried and convicted for that offense, he was not properly sentenced under the provision. Alternately, he contends that even if Sec. 3147 is merely a sentence enhancement provision, the sentence that he received under it was nonetheless improper because he was not given adequate notice of the fact that he was subject to the enhanced penalty. Our standard of review of these issues of statutory construction is plenary. See Chrysler Credit Corp. v. First Nat'l Bank and Trust Co., 746 F.2d 200, 202 (3d Cir.1984). Pursuant to that standard, we will affirm the district court's imposition of sentence.[12]
 
 
 27
 A. Section 3147 Does Not Create a Separate Offense
 
 
 28
 In reaching our conclusion that Sec. 3147 was intended only to enhance the punishments for other offenses, we are guided both by the plain language of the statute, which speaks clearly in terms of enhanced penalty--"[a] person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense " 18 U.S.C. Sec. 3147 (Supp. IV 1986)--and by the legislative history of the provision, which reflects Congress's intent that the potential for enhanced punishment serve as a deterrent to the commission of crimes during bail release. The Senate Report of this provision noted that
 
 
 29
 [s]ection 3147 is designed to deter those who would pose a risk to community safety by committing another offense when released under the provisions of this title and to punish those who indeed are convicted of another offense. This section enforces the self-evident requirement that any release ordered by the courts include a condition that the defendant not commit another crime while on release. Given the problem of crime committed by those on pretrial release this requirement needs enforcement. Accordingly, this section prescribes a penalty in addition to any sentence ordered for the offense for which the defendant was on release. This additional penalty is a term of imprisonment of at least two years and not more than ten if the offense committed while on release is a felony. If the offense committed while on release is a misdemeanor, this additional penalty is at least 90 days and not more than one year.
 
 
 30
 See S.Rep. No. 225, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3217 (emphases added). This passage refers to penalty only and to the fact that that penalty is "additional" to the sentence imposed for the substantive offense for which the defendant has been convicted. It gives no indication that Congress intended to create a separate criminal offense by its enactment of Sec. 3147 and we have found no such intent evident elsewhere in the legislative history.
 
 
 31
 Our conclusion accords with a decision of the Court of Appeals for the Ninth Circuit in a case involving a claim identical to Di Norscio's. In United States v. Patterson, 820 F.2d 1524 (9th Cir.1987), the appellate court held that
 
 
 32
 [s]ection 3147 is a sentence enhancement statute which simply mandates an enhanced sentence for someone who commits an offense while released on bail. There is nothing exceptional about the statute, nor is it vague or ambiguous. The language is plain and the meaning is clear.
 
 
 33
 Patterson, 820 F.2d at 1526. See also, United States v. Sink, 851 F.2d 1120 (8th Cir.1988) (Section 3147 merely enhances punishment for crime committed while on release, rather than creating separate crime that had to be presented to a grand jury and proven beyond reasonable doubt at trial); United States v. Feldhacker, 849 F.2d 293 (8th Cir.1988) (same). We are similarly persuaded that Sec. 3147 is a sentence enhancement provision and not a separate offense and, accordingly we will affirm the district court's judgment of sentence.
 
 
 34
 B. Section 3147 Does Not Require Specific Notice
 
 
 35
 Di Norscio also claims that he received inadequate notice that he was subject to penalty under Sec. 3147. He did not claim, at his sentencing, that he was unaware that he was subject to this penalty, and raises this claim for the first time on appeal. We find this contention without merit. We do not read the language or the legislative history of Sec. 3147 as mandating explicit notice to a defendant of the possibility for sentence enhancement as a pre-condition to sentence and, accordingly, we will affirm the district court's judgment of sentence.
 
 
 36
 Di Norscio's argument on this issue relies upon a decision of the Court of Appeals for the Fourth Circuit. In United States v. Cooper, 827 F.2d 991 (4th Cir.1987) the appellate court held that a defendant who was not specifically advised by the judicial officer who released him on bail that the defendant would be subject to enhanced penalty for committing an offense while on release could not be sentenced under Sec. 3147. Cooper reasoned that Sec. 3147 should be read in tandem with a provision of Sec. 3142 of the Bail Act. See 18 U.S.C. Sec. 3142(h) (Supp. IV 1986). Section 3142 regulates the conditions and circumstances of releases for defendants pending their trials. It requires that such conditions be set forth in a written statement to the defendant "in a manner sufficiently clear and specific to serve as a guide for [his or her] conduct." 18 U.S.C. Sec. 3142(h)(1) (Supp. IV 1986). It also provides that the judicial officer who authorizes the release of a person under this statute advise that person of "the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release." 18 U.S.C. Sec. 3142(h)(2)(A) (Supp. IV 1986). Cooper held that, because Sec. 3142 explicitly mandates notice to a defendant of the punishment to which he or she would be subject for breaking the terms of release, a similar mandate should be read into Sec. 3147. The court noted that "while Congress did not specify the effect on sentence enhancement of the failure to give such notice, its silence and the rule of lenity to be applied in construing ambiguous penal statutes lead to the conclusion that Sec. 3147" could not be applied in the absence of notice. Cooper, 827 F.2d at 994. We see no such ambiguities in the language of the provision and, accordingly, we reject the view reached by Cooper.
 
 
 37
 Cooper noted that the legislative history of Sec. 3142 included particular reference to Congress's intent that the statute serve to deter recidivism. Consistent with that goal, as Cooper notes, the legislative history of Sec. 3142(h) states that:
 
 
 38
 [the judicial officer] is ... required to advise the person [released on bail] of the penalties applicable to a violation of the conditions.... The purpose of such advice is solely to impress upon the person the seriousness of failing to appear when required.
 
 
 39
 S.Rep. No. 225 at 25, reprinted in 1984 U.S.Code Cong. & Admin.News at 3208, see also Cooper, 827 F.2d at 994. We do not, however, read this legislative history as broadly as did Cooper, to require that such notice be a prerequisite to punishment for violation of the statute. Moreover, we fail to see how such a reading could be consistent with Congress's intent. Indeed, the statements immediately succeeding the above quoted legislative history suggest precisely the opposite conclusion. In statements concerning the effect of Sec. 3142(h)'s notice requirement on other provisions of the Bail Act, the Senate Report noted that "failure to render such advice is not a bar or defense to prosecution for bail jumping under Sec. 3146 ... [or] to a prosecution under the[ ] sections of title 18 designed to protect witnesses, victims and informants." Rather, "[t]he purpose of such advice is solely to impress upon the person the seriousness of failing to appear when required." Id. (emphasis added).
 
 
 40
 Cooper interpreted the omission from the passage of legislative history quoted above of a specific reference to Sec. 3147--in light of the specific references that that passage makes to other provisions of the act--as indicative of Congress's intent that the notice requirement of 3142(h) serve as a prerequisite to the imposition of an enhanced sentence under Sec. 3147 even though it explicitly does not serve as a bar to punishment for other violations. See Cooper, 827 F.2d at 995. In our view, this rationale reads too much into what was not said by the legislative history and reads too little of what was said by the statute itself. We find it too inconsistent with the overall scheme of the Bail Act to subscribe to the view that Congress intended that persons who commit the very crimes that the act intended to deter, should avoid punishment for those crimes because of the judicial officer's failure explicitly to remind the defendant of the consequences of his or her acts. Cf. Feldhacker, 849 F.2d at 299 (Section 3147 does not require written notice to the defendant of the government's intent to seek an enhanced sentence, "[i]t is a self-executing and mandatory provision of law, addressed by Congress to sentencing courts."). We will therefore affirm Di Norscio's sentence under Sec. 3147.
 
 V.
 
 41
 Denial of Due Process In The Constitution Of The Grand Jury
 
 
 42
 Cohen argues that the grand jury that indicted him substantially underrepresented Blacks, Hispanic-Americans and persons with less than high school educations, in violation of his sixth amendment right to be tried by an "impartial jury."[13] Encompassed within this right is the requirement that juries be selected through a process that represents a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975); United States v. Salamone, 800 F.2d 1216, 1218 (3d Cir.1986). Cohen also charges violation of the Jury Selection Act of 1968, 28 U.S.C. Secs. 1861 et seq. (1982), which codifies the fair cross section requirement.[14] We conclude that Cohen did not satisfy each element of the applicable test established by the Supreme Court in Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)[15] and, therefore, is not entitled to relief on this claim.
 
 
 43
 Duren requires that a defendant prove: (1) that the allegedly excluded group is distinctive in the community; (2) that the group's representation in jury pools is not fair and reasonable in relation to the number of its members in the community; and (3) that this underrepresentation is due to systematic exclusion in the jury selection process. Duren, 439 U.S. at 364, 99 S.Ct. at 668, see also Salamone, 800 F.2d at 1218. Each of these three elements must be demonstrated in order for the claim to succeed. United States v. Pepe, 747 F.2d 632, 649 (11th Cir.1984). We hold that Cohen's claim falls on the third Duren ground and, in light of that conclusion, hold that he has failed to establish a violation either under the Jury Selection Act or under the Sixth Amendment.[16]
 
 
 44
 Juries in the District of New Jersey are selected pursuant to the guidelines set out in The Plan of Implementation of the United States District Court for the District of New Jersey Pursuant to the Jury Selection and Service Act of 1968, ("The New Jersey Plan"), reprinted in Supplemental Appendix of Appellee ("Supp.App.") at 87. The District is divided into three divisions, of which the Newark Division is the largest. Potential jurors' names are randomly selected from voter registration lists and automobile driver registration lists. Id. at 3, reprinted in Supp.App. at 89. The New Jersey Plan then provides for the merging of the names on the voters lists and the drivers lists, to create consolidated lists. Id. at 3-4, reprinted in Supp.App. at 89-90.[17]
 
 
 45
 The names of potential jurors that will comprise the master wheel are drawn randomly, as follows: "a starting number from one to 20 shall be drawn by lot, and the corresponding name shall be selected from the first list used along with each 500th name thereafter on that list and continuing with the remainder of the lists." Id. at 4, reprinted in Supp.App. at 90. The master jury wheel may consist of a "revolving drum, drawers of file cabinets or electronic data storage devices such as punched cards, magnetic tapes, or magnetic disc files." Id. at 7, reprinted in Supp.App. at 93. The wheel is emptied and refilled every four years, within nine months of the November election. Id. at 8, reprinted in Supp.App. at 94. The wheel from which Cohen's grand jurors were drawn, and which he contests, was emptied and refilled within nine months of the November 1984 election.
 
 
 46
 Cohen claims that the Plan systematically excluded the three groups that he has identified by its use of voter and driver lists as the exclusive source of names for the jury wheel and by the improper merging of these two lists of persons. His only factual support for his entire underrepresentation claim is an affidavit from a demographer, Dr. James O'Reilly, who compared a sample taken from the 1984 qualified-juror wheel to the adult population of Blacks, Hispanic-Americans and persons without a high school education in the Newark Division and concluded that the groups were substantially underrepresented.[18] Affidavit of James O'Reilly at 1-4, reprinted in Appellants' App. at 5242-45. Assuming arguendo that this affidavit supplies a statistical basis for the claim that the underrepresentation existed, it does not address why the Plan causes this underrepresentation. Cohen presents no proof to support his contention that the use of voter lists in fact causes systematic exclusion of these groups. Even if we accepted the argument however, that the voter lists underrepresent the groups identified by Cohen, his only argument for why drivers lists insufficiently supplement voter lists appears in a footnote in his motion to the district court: "In some communities use of the driver's license list as a supplement may be adequate to solve the problem ... [h]owever, use of this list alone as the supplemental source is obviously insufficient in the peculiar urban communities comprising the Newark Division." Appellants' App. at 5264 (citation omitted). Cohen's conclusory statement that supplementation with drivers lists is "obviously insufficient" in these "peculiar urban communities" simply does not meet the most minimum requirement for making out a prima facie case. We hold, therefore, that Cohen has not made out a prima facie case of systematic underrepresentation in the grand jury venire.
 
 VI.
 Conclusion
 
 47
 In accordance with this opinion, we will affirm the judgments of convictions and sentences entered by the district court as to each appellant.
 
 
 
 *
 Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Appellants seek relief from their convictions on a host of other grounds as well. On the claim of ineffective assistance of counsel raised by Sinico, we will adhere to this Court's prior holdings that such claims are not properly interposed on direct appeal, but should be raised in appropriate collateral proceedings. See, e.g., United States v. Gambino, 788 F.2d 938 (3d Cir.), cert. denied, 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986)
 Appellants contend that the verdict was affected by juror taint, that the district court erred by failing to grant a motion for severance and by improperly denying the request for a jury charges regarding the alleged existence of multiple conspiracies, that the government's closing summation unfairly prejudiced the jury and that the verdict was contrary to the weight of the evidence. Di Norscio claims that the district court erred by refusing to dismiss the indictment against him for prosecutorial misconduct and that his prosecution violated his double jeopardy rights. He and DeLuca allege that the district court improperly denied them the opportunity to present a complete defense by erroneously excluding evidence, restricting cross-examination and limiting their opening and closing arguments to the jury. DeLuca and Di Pasquale contend that the district court considered improper factors in its determination of sentence and Di Pasquale contends that his prosecution was improper because it violated the government's "Petite" policy of not prosecuting persons who have previously been prosecuted in a state proceeding for the same acts that are the basis of the federal prosecution. Truglia contends that the district court erred by denying his request for a jury instruction that one of the criminal acts charged to him was an independent act not in furtherance of the charged conspiracy and by denying his motion for a judgment of acquittal. We have evaluated all of these claims and find them to be plainly without merit and not warranting discussion.
 
 
 [2]
 Pursuant to Fed.R.App.P. 28(i), each appellant has adopted arguments raised by other appellants to the extent that those arguments apply to him. For convenience and clarity, our discussion of the appellants' contentions makes reference only to one of the named appellants. We have, however, considered the merit of each argument to each appellant whose conviction and sentence is implicated and, in that light, we reach our decision to affirm
 
 
 [3]
 These individuals: Frank Suppa, Manuel Monteiro, Thomas Marino, Dick Pearson and Robert Fisher each pleaded guilty to the charges prior to the commencement of the trial
 
 
 [4]
 Hawley, (who changed his name to "Jay Richmond"), testified that he was a regular occupant at Di Norscio's home in Florida and at Truglia's home in Florida from September through December, 1985. During that time he witnessed cocaine transactions three or four times a week at either Truglia's home or at Di Norscio's home and observed DeLuca and Sinico working for Di Norscio and Truglia as "runners" who picked up drugs in Florida for delivery to New Jersey, New York, Rhode Island and Tennessee. Hawley also testified that he was often with Di Norscio and Truglia while they counted the proceeds from these drug transactions. See Joint Appendix to the Briefs of Defendants-Appellants ("Appellants' App.") at 207-09
 Hamilton testified that he purchased cocaine on a regular basis from Di Norscio and Cohen. Hamilton had been arrested in Tennessee for the sale of cocaine to undercover drug enforcement agents. He testified that the cocaine in his possession in Tennessee at the time of his arrest was part of a shipment that he had received from DiPasquale who had delivered it to him on behalf of Di Norscio from Florida. See Appellants' App. at 1439-41.
 Fisher, who was indicted with the appellants, testified that he too regularly purchased cocaine from Di Norscio and Cohen. He testified that he delivered cocaine payments to DeLuca in New Jersey, and to Di Norscio and Cohen in Florida. He also testified that he had received cocaine from Di Norscio and Cohen for distribution in Rhode Island. See Appellants' App. at 1067-71, 1168-70.
 
 
 [5]
 Under Sec. 846, it is unlawful for "(a)ny person [to] attempt[ ] or conspire[ ] to commit any offense defined in this subchapter." 21 U.S.C. Sec. 846 (1982)
 Each of the defendants except Di Pasquale was tried by a jury on these counts and convicted pursuant to the jury's verdicts. Di Pasquale entered a plea of guilty to the offenses with which he was charged.
 
 
 [6]
 Section 848(b) provides, in pertinent part, that
 [a]ny person who engages in a continuing criminal enterprise [CCE] shall be imprisoned for life and fined ... if--
 (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders[,]
 21 U.S.C. Sec. 848(b) (Supp. IV 1986), and the enterprise involves a quantity of drugs or sum of money that exceeds a delineated amount.
 Section 848(d) states that
 [a] person is involved in a CCE if:
 (1) he [or she] violates any [felony] provision of this subchapter or subchapter II of this chapter ... and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
 (A) ... undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 21 U.S.C. Sec. 848(d) (Supp. IV 1986).
 
 
 [7]
 Section 841(a)(1) makes it unlawful:
 to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
 21 U.S.C. Sec. 841(a)(1) (1982).
 
 
 [8]
 Section 3147 provides that
 [a] person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to--
 (1) a term of imprisonment of not less than two years and not more than ten years if the offense is a felony
 18 U.S.C. Sec. 3147 (Supp. IV 1986). The statute further provides that the "term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment." Id.
 
 
 [9]
 We note that several federal appellate courts have assumed that Batson has applicability to racial or ethnic groups other than black Americans. See e.g., United States v. Alcantar, 832 F.2d 1175, 1180 (9th Cir.1987) (applying Batson to a challenge that Hispanic-Americans were improperly excluded from jury service); United States v. Chalan, 812 F.2d 1302, 1313-14 (10th Cir.1987) (applying Batson to a challenge that Native Americans were improperly excluded from jury service). Cf. Roman v. Abrams, 822 F.2d 214, 227 (2d Cir.1987) (under the Sixth Amendment, whites are a cognizable group for Batson analysis), petition for cert. filed, (U.S. Dec. 12, 1987) (No. 87-6031). Indeed, two federal appellate courts have considered the applicability of Batson to Italian-Americans. See United States v. Sgro, 816 F.2d 30, 33 (1st Cir.1987) ("[w]e assume without deciding that the principles of Batson would extend to ethnic as well as racial constituencies"), cert. denied, --- U.S. ----, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988); United States v. Bucci, 839 F.2d 825, 833 (1st Cir.1988) ("[w]hether Italian-Americans comprise a group needing 'protection' from 'community prejudices' is a question of fact"); United States v. Biaggi, 853 F.2d 89 (2d Cir.1988) aff'g United States v. Biaggi, 673 F.Supp. 96, 102 (E.D.N.Y.1987) ("It can therefore be confidently concluded that the Court in Batson meant 'cognizable racial groups' to include a variety of ethnic and ancestral groups subject to intentional discrimination, including Italian-Americans."). In each of these decisions, the appellate court concluded that, even if Batson is not per se limited to black Americans or to race, the defendant failed to make the requisite factual showing of the cognizability of Italian-Americans or persons with Italian surnames to merit relief under Batson. We reach the same result in this case
 
 
 [10]
 While Judge Becker agrees with the discussion in this section of the opinion, he would pretermit it in view of his agreement with the district court that the Batson rule is limited to discrimination against members of cognizable racial groups. See Brown v. North Carolina, 479 U.S. 940, 107 S.Ct. 423, 424, 93 L.Ed.2d 373 (1986) (O'Connor, J. concurring in the denial of certiorari) (Batson "is a product of the unique history of racial discrimination in this country; it should not be divorced from that context.")
 
 
 [11]
 Pursuant to Sec. 455(a), a judge must "disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. Sec. 455(a) (1982). A judge must also disqualify himself or herself where he or she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. Sec. 455(b)(1) (1982). Finally, pursuant to Sec. 455(b)(3) a judge is required to disqualify himself or herself if he or she "has served in governmental employment and in such capacity participated as counsel, advisor or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. Sec. 455(b) (1982)
 
 
 [12]
 The government argues that Di Norscio did not preserve his right to appeal this sentence because he did not comply with the district judge's request for a written motion after sentencing. Di Norscio orally objected to the Sec. 3147 sentence. He submitted the motion that the judge requested; it was received and filed but was not listed for argument by the clerk because of Di Norscio's failure to attach a proposed order. Di Norscio then filed this appeal and the motion was never ruled upon
 We treat the motion before the district court as one for reconsideration of the sentence that was not ruled upon by the district court. Di Norscio, however, is not appealing the disposition of that motion. Rather, he challenges the propriety of the sentence itself. "Final judgment in a criminal case means sentence. The sentence is the judgment." Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937). Thus, although the district court never disposed of Di Norscio's motion, it did enter a final judgment of conviction and sentence and, from that judgment, Di Norscio's present appeal is proper.
 
 
 [13]
 Cohen also argues that the alleged underrepresentation violated his equal protection rights. The Fifth Amendment "forbid[s] discrimination that is so unjustifiable as to be violative of due process." Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975). Fifth amendment equal protection claims are approached in the same way as fourteenth amendment claims. Id. We find that Cohen lacks standing to assert an equal protection violation, however, given that neither he nor any of the appellants claim to be members of the allegedly excluded groups. See Castaneda v. Partida, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) ("[I]n order to show that an equal protection violation has occurred ... the defendant must show that the procedure employed resulted in substantial underrepresentation of his [or her] race or of the identifiable group to which he [or she] belongs.") (emphasis added). Cohen's standing is limited to the assertion of violations of the sixth amendment's and the Jury Selection Act's guarantee of a fair cross section, see Taylor v. Louisiana, 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975), and we address these claims in this opinion
 
 
 [14]
 The Jury Selection Act states "that all litigants in Federal courts entitled to trial by jury shall have the right to grand ... juries selected at random from a fair cross section of the community...." 28 U.S.C. Sec. 1861 (1982)
 
 
 [15]
 The same prima facie case is required to prove a violation of both the Act and the Sixth Amendment. United States v. Miller, 771 F.2d 1219, 1227 (9th Cir.1985); United States v. Test, 550 F.2d 577, 584-85 (10th Cir.1976)
 
 
 [16]
 In light of our holding that the claim falls on the third Duren ground, we express no finding regarding the sufficiency of the claim on the first and second factors of the Duren test
 
 
 [17]
 This methodology is consistent with the Jury Selection Act, which explicitly provides that either voter registration lists or lists of actual voters shall serve as a source for the names of prospective jurors and that plans to determine juror lists "shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by [this Act]." 28 U.S.C. Sec. 1863(b)(2) (1982)
 
 
 [18]
 Dr. O'Reilly adjusted upwards the Black and Hispanic-American population, based on his assumption of under-counting in the 1980 census. We will accept these adjusted population figures for purposes of this analysis