**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2205
_____

GREGORY BROWN,
                                        Appellant

v.

CLINICAL DIRECTOR ELLEN MACE-LIEBSON;
ASSOCIATE WARDEN CYNTHIA ENTZEL
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-14-cv-00623)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 8, 2019
Before:  MCKEE, COWEN and RENDELL, Circuit Judges

(Opinion filed: July 9, 2019)
_____

OPINION[*]
_____

PER CURIAM

       Pro se appellant Gregory Brown, a federal prisoner proceeding in forma pauperis,

appeals from the District Court's order entering summary judgment against him.  Brown

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

also appeals from several other orders that the District Court entered during the course of the litigation. For the reasons discussed below, we will affirm.

I.

Because we write primarily for the parties, we will recite only the facts necessary for our discussion. In June 2013, Brown injured his back while lifting weights at FCI-Schuylkill, where he was incarcerated. Since then, Brown has experienced severe pain, numbness, and swelling in his back, hip, knee, shin, and foot. On July 2, 2013, Brown was examined by Physician's Assistant ("PA") Lingenfelter, who prescribed pain medication and the use of a muscle rub. About a week later, Brown was examined by PA Rush, who noted a possible lumbar strain and recommended stretching and rest for four to six weeks. On July 19, 2013, Brown was examined during sick call. He asked to be evaluated by a physician and to have an MRI scheduled. On July 23, Brown was again examined by PA Rush, who provided pain medication and ordered an X-ray of Brown's spine.

On July 29, 2013, Brown submitted an inmate request to the defendants, Clinical Director Ellen Mace-Liebson and Associate Warden Cynthia Entzel. Brown requested to be examined by a physician, but Dr. Mace-Liebson responded that Brown had to first complete the course of evaluation with his assigned providers. In August 2013, Brown approached Entzel on multiple occasions to discuss his medical care. Entzel responded that she had emailed Dr. Mace-Liebson and that she was looking into the issue, but that Dr. Mace-Liebson was away at the moment.

2

On August 16, 2013, PA Rush examined Brown, ordered an X-ray of Brown's knee, and discussed possible treatment options, including the use of oral steroids, until Brown could be evaluated by Dr. Mace-Liebson. On September 3, 2013, Brown was scheduled to see Dr. Mace-Liebson, but she was not at work that day. On September 17, 2013, Brown was examined by Dr. Mace-Liebson. She informed Brown that an MRI was not clinically indicated and that Brown should continue with conservative treatments such as rest and stretching.

In October 2013, Brown sent another inmate request to Dr. Mace-Liebson. Brown restated his medical issues and requested an MRI. Dr. Mace-Liebson responded that Brown's concerns should be handled through his sick call provider, who would refer him to a physician if necessary. In December 2013, Brown sent an inmate request to Entzel. Brown requested an MRI and wrote that he believed that Dr. Mace-Liebson may have been retaliating against him for filing grievances about his medical care. Entzel responded that, based on Dr. Mace-Liebson's medical examination and expertise, an MRI was not indicated at that time.

On January 14, 2014, Brown was again examined by Dr. Mace-Liebson. She told Brown that an MRI was still not clinically indicated. That was Brown's last examination by Dr. Mace-Liebson, as he was transferred from FCI-Schuylkill to FCI-Edgefield on August 25, 2014. Before his transfer, Brown was examined by other FCI-Schuylkill medical staff on February 6, 2014, and on July 15, 2014. Brown was again

3

recommended conservative treatments, including rest, weight loss, and stretching exercises.

In February 2015, after his transfer and while incarcerated at FCI-Edgefield, Brown had his first MRI. Based on that MRI, doctors treating Brown determined that his back was stable and that surgery was not recommended. They provided Brown with epidural steroid injections, which Brown acknowledges were similar to the oral steroids that he was offered at FCI-Schuylkill. Brown had a second MRI in February 2016. In September 2016, an orthopedic surgeon determined that Brown's symptoms were not improving from the course of conservative treatment, and that surgery might be indicated. Brown had a third MRI and a consult with the West Virginia University Department of Neurosurgery in early 2017. No surgery was scheduled or recommended at that time.

In April 2014, before he was transferred from FCI-Schuylkill, Brown filed a complaint in the District Court against Entzel and Dr. Mace-Liebson, raising Eighth Amendment claims pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). The District Court dismissed the claims against Entzel but permitted the claims against Dr. Mace-Liebson to proceed. Brown then filed an array of discovery motions, as well as a motion to recuse the District Judge, a motion to appoint an expert, and several motions for appointment of counsel.

In a thorough opinion addressing Brown's discovery motions, the District Court reviewed the written discovery in this case. The District Court determined that Dr. Mace-Liebson provided adequate responses to all 25 interrogatories that had been properly

4

served by Brown, and that Dr. Mace-Liebson provided adequate responses to most, but not all, of Brown's document requests. Thus, the District Court granted Brown's motion to compel, in part, and ordered Dr. Mace-Liebson to provide further responses regarding her work schedule and any grievances that resulted in discipline against her. The District Court denied, without prejudice, Brown's motion to conduct depositions, as he failed to identify a deposition officer pursuant to Federal Rules of Civil Procedure 30 and 31. The District Court denied Brown's motion for recusal based on the District Judge's prior service as an Assistant United States Attorney. The District Court also denied Brown's motions for appointment of counsel.

In September 2017, the District Court granted summary judgment in favor of Dr. Mace-Liebson. Brown then filed a motion for reconsideration, which he supplemented with evidence showing that he had recently been scheduled for back surgery. The District Court denied the motion for reconsideration in May 2018. This appeal ensued.

II.

We have jurisdiction under 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Summary judgment is proper where,

5

viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006). "We generally review the District Court's denial of reconsideration for abuse of discretion. However, to the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed de novo; to the extent that the District Court's disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999) (citations omitted). We may affirm on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

To succeed on an Eighth Amendment medical needs claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).[1] Prison officials can "act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or

---

[1] The parties do not dispute that Brown's medical needs were serious. See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment").

6

delaying access to medical care or interfering with the treatment once prescribed.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). But "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Thus, "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson, 850 F.3d at 535 (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")).

Here, the District Court's dismissal of the claims against Entzel was proper. A non-medical prison official is not charged with deliberate indifference for withholding adequate medical care from a prisoner being treated by medical personnel "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Although Brown alleged that he filed grievances with Entzel and complained to her regarding his request for an MRI, Brown also alleged that Entzel reviewed the issue and deferred to the medical staff's professional judgment. Brown failed to allege that Entzel, operating in her supervisory capacity as the Associate Warden, had any reason to believe that the prison doctors or their assistants were mistreating Brown.[2]

---

[2] The District Court did not err in denying leave to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Brown has waived any argument that his

We also agree with the District Court's determination that Dr. Mace-Liebson was entitled to summary judgment because Brown produced no evidence that would support a finding that she acted with deliberate indifference.  The undisputed facts show that Dr. Mace-Liebson consistently exercised her professional judgment during the course of Brown's treatment at FCI-Schuylkill in 2013 and 2014.  Brown's core arguments—that Dr. Mace-Liebson should have provided him an MRI or surgery sooner—constitute "mere disagreement as to the proper medical treatment."  Lanzaro, 834 F.2d at 346.  The facts in the record regarding Brown's treatment at FCI-Schuylkill and after he left FCI-Schuylkill do not suggest that Mace-Liebson delayed or denied any treatment for non-medical reasons, or that she otherwise exposed Brown to undue suffering, as other physicians pursued a similar course of conservative treatment for years after Brown left Dr. Mace-Liebson's care.  Nor did Brown marshal any evidence showing that Dr. Mace-Liebson "so deviated from professional standards of care that it amounted to deliberate indifference."  Pearson, 850 F.3d at 541 (quotation marks and citation omitted).[3]

complaint raised a retaliation claim under the First Amendment.  United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (issues not raised on appeal are waived).

[3] The District Court did not abuse its discretion in denying: (1) Brown's motion for leave to file a sur-reply in opposition to the motion for summary judgment; or (2) Brown's motion to strike two declarations filed in support of Dr. Mace-Liebson's motion for summary judgment.  See generally Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 276 (3d Cir. 2001); In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982).  Brown did not show that his proposed sur-reply would have raised any new evidence or meritorious argument, nor did he establish any grounds to strike the declarations.

The District Court properly denied Brown's motion for reconsideration of the District Court's order granting summary judgment to Mace-Liebson, as Brown failed to establish "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe, 176 F.3d at 677. While Brown sought to present new evidence regarding his planned surgery, in order to secure relief, Brown had to show that the evidence "(1) [was] material and not merely cumulative, (2) could not have been discovered previously through the exercise of reasonable diligence and (3) would probably have changed the outcome" of the District Court's decision. Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 309–10 (3d Cir. 2001).

Ultimately, Brown failed to show that the new evidence was material and that it would have changed the outcome of the District Court's decision. The fact that physicians recommended surgery[4] in late 2017—several years after Brown left Dr. Mace-Liebson's care—is insufficient to create a genuine dispute of material fact regarding Dr.

---

[4] On appeal, Brown asserts that he had surgery in 2018. Brown has not filed a motion to supplement the record on appeal, but even if he had, that evidence would not change our analysis. See generally Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013).

Mace-Liebson's deliberate indifference. Thus, the District Court properly denied the motion for reconsideration.[5]

IV.

The District Court did not abuse its discretion in ruling on the remaining issues that Brown has challenged on appeal, including, first, Brown's motion for recusal. See United States v. Di Pasquale, 864 F.2d 271, 278 (3d Cir. 1988). Pursuant to 28 U.S.C. § 455(b)(3), a judge must disqualify himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." With regard to a judge who formerly served in the United States Attorney's Office, we have stated that, "absent a *specific showing* that that judge was previously involved with a case while in the U.S. Attorney's office that he or she is later assigned to preside over as a judge, § 455(b)(3) does not mandate recusal." Di Pasquale, 864 F.2d at 279 (emphasis in original). Brown has offered no evidence indicating the District Judge's involvement with Brown's case during the Judge's employment as an Assistant United States Attorney over twenty years ago. Nor did Brown establish that a reasonable person would conclude that the District Judge's impartiality might be

---

[5] Brown also argued that the District Court's denial of Dr. Mace-Liebson's motion to dismiss was the "law of the case" and prevented a grant of summary judgment in her favor. That argument is meritless. See United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 493 (3d Cir. 2017).

questioned based on his prior employment as an Assistant United States Attorney.  See

generally Liteky v. United States, 510 U.S. 540, 555 (1994).

Second, the District Court did not abuse its discretion in denying Brown's motions

for appointment of counsel.  See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993).  The

District Court identified the appropriate considerations and properly concluded that it was

unnecessary to appoint counsel, as Brown had been adeptly litigating his case.  See id. at

155–58.

Finally, the District Court did not abuse its discretion in making its discovery

rulings.  See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010)

("We review a district court's discovery orders for abuse of discretion, and will not

disturb such an order absent a showing of actual and substantial prejudice.").  The

District Court thoroughly considered the various discovery issues and properly granted

Brown's motion to compel in part.[6]  The District Court's denial of Brown's motion to

take depositions was also proper, as Brown failed to identify, or pay the costs for, a

deposition officer.  See Fed. R. Civ. P. 31, 32.  Brown was not entitled to take depositions

or to retain an expert at the government's expense.  See Tabron, 6 F.3d at 158–59.

---

[6] The District Court did not abuse its discretion in denying Brown's subsequent motion to compel and for sanctions.  Dr. Mace-Liebson complied with the District Court's order granting the original motion to compel, as she produced additional documents, including her time sheets, and she provided a response that no grievances against her have ever been substantiated.

11

Brown has not shown that he was denied any discovery that could have advanced his claims. See Anderson, 621 F.3d at 281.

Accordingly, we will affirm the judgment of the District Court.[7]

---

[7] Brown's "Motion to Schedule Case for Disposition" is denied as unnecessary. As the Appellees have not filed a brief, we decide this appeal without considering any briefing from them.