LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge.
This matter comes before the Court on the parties’ cross-motions for departures from the United States Sentencing Guidelines (“USSG”). See United States Sentencing Commission, Guidelines Manual (Nov. 1995). The Court received testimony and heard oral argument on August 7,1996. For the reasons stated herein, defendant’s motion is DENIED, and the Government’s motion is GRANTED IN PART AND DENIED IN PART.
Congress enacted the guidelines to provide honesty, uniformity, and proportionality in sentencing. U.S.S.G., Ch. 1, Pt. A, intro, comment A(3). The guidelines, taking into account the relevant distinctions common to specific crimes, permit the Court to impose a sentence within a prescribed range. Id. In formulating the guidelines, the United States Sentencing Commission (the “Commission”) acknowledged that “[r]elevant distinctions not reflected in the guidelines probably will occur rarely and sentencing courts may take such unusual cases into account by departing from the guidelines.” Id. “When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.” U.S.S.G., Ch. 1, Pt. A, intro, comment 4(b). The facts of the instant case illustrate the type of situation not contemplated by the Commission, and for which departure was created.
STATEMENT OF FACTS
On November 5, 1987, defendant James Lisk was indicted and charged with conspiring to steal $656,000 in American Express travelers checks.[1] Prior to being arraigned, however, on November 23, 1987, defendant and two friends, Vincent Carinara and Harry Stridacchio, staged an accident at Gross-man’s Lumber in Sayreville, New Jersey. While at the lumberyard, defendant placed a piece of lumber on the ground and laid down beside it, pretending to have been injured by the fallen wood. Defendant’s friends called for assistance, and defendant was transported to a hospital. Subsequently, defendant pretended that he was unable to speak or care for himself. Defendant was treated by numerous doctors for many years, and was ultimately diagnosed as suffering from conversion reaction. In addition, the scheme involved the filing of a lawsuit by defendant against Grossman’s Lumber on August 9, 1989, in which defendant sought damages based on the accident.
As a result of defendant’s faked injury, the original Indictment for the theft was dismissed by the Government based on the false belief that defendant was mentally and physically unfit to stand trial. Subsequently, defendant continued the charade by collecting $107,622.80 in Social Security benefits and allowing Prudential Insurance Company to pay false claims to defendant’s doctors in the amount of $217,567.00.
Thereafter, the Government charged defendant with three counts of mail fraud, based on the submission of false benefit and insurance documents. Defendant was convicted on all three counts by a jury in this Court, on April 16, 1996. It is now the task of the Court to determine what, if any, impact the first alleged crime has upon the sentence for the crime of which defendant was convicted.
DISCUSSION
I. Upward Departure
The Government moves for an upward departure from the sentencing guideline range *335 applicable to defendant because of his deceit on the Government, based on four alternative theories. Additionally, the Government requests an upward departure based on defendant’s role as a leader or manager of the fraudulent scheme.
1. § IB 1.3
The first theory upon which the Government moves for an upward departure is based on the monetary loss allegedly incurred in the theft at Newark Airport.[2] According to the Government, defendant stole $656,000 worth of American Express Travelers Checks from the mail at Newark Airport. As detailed above, to avoid prosecution for said crime, defendant feigned a debilitating injury. The Government argues that by committing the second crime, for which he was convicted, defendant successfully avoided the prosecution of theft. Because defendant prevented the Government from prosecuting him for theft, the Government asserts that said crime should be taken into account in this sentencing.
Section lB1.3(a)(2) of the U.S.S.G. states that a guideline range should be based on “all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction.” U.S.S.G.. § lB1.3(a)(2). The “same course of conduct” requirement has been construed to mean whether the defendant repeats the same activity over time. United States v. Hill, 79 F.3d 1477, 1481-82 (6th Cir.1996), petition for cert. filed, (U.S. June 24, 1996) (No. 95-9455). Application Note 9(B) instructs the Court to analyze “the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.” U.S.S.G. § 1B1.3, comment. (n.9(B)). In addition, “ ‘[cjommon plan or scheme’ requires that acts ‘be connected together by common participants or by an overall scheme_’” Hill, 79 F.3d at 1482. “[T]he guidelines prescribe a sliding scale approach, i.e., where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor.” Id. at 1484 (citation omitted).
In the case sub judice, the Court is not satisfied that the alleged theft at Newark Airport is relevant conduct for the purpose of defendant’s sentence for mail fraud. Defendant did not engage in a common scheme or repeat similar conduct. Avoidance of prosecution for theft was merely the motive for which defendant committed the mail fraud. Hence, the Court finds that an upward departure based on the alleged theft of over $600,000 in a case for which defendant was not convicted is inappropriate.
2. § 5K2.0
Alternatively, the Government moves for an upward departure from the guideline range pursuant to U.S.S.G. § 5K2.0. This section provides, in pertinent part: “Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds ‘that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.’ ” U.S.S.G. § 5K2.0. The guideline recognizes that “[cjircumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance.” Id. Bather, it is within the Court’s discretion to determine whether departure is necessary, “even though the reason for departure is taken into consideration in the guidelines.. ’.” Id. That is, the Court may determine that “in light of unusual circumstances, the guideline level attached to that factor is inadequate.” Id.
Moreover, the Court may depart on the basis of previous, related misconduct, even though the acts in question do not fall within the technical definition of relevant conduct. United States v. Kim, 896 F.2d 678, 684 (2d Cir.1990). See also United States v. Uccio, 917 F.2d 80, 86 (2d Cir.1990); *336 United States v. Zamarripa, 905 F.2d 337, 341-42 (10th Cir.1990).[3] Additionally, the fraud guideline provides that an upward departure may be appropriate when “a primary objective of the fraud was non-monetary; or the fraud caused or risked reasonably foreseeable, substantial non-monetary harm.” § 2F1.1, comment. (n.lO(a)).
In the instant case, the facts are such that they could not have been contemplated by the Sentencing Commission when formulating the guidelines. The prospect of a person feigning a debilitating injury, spending months in hospitals, and subjecting himself to continued invasive medical treatment for the purpose of avoiding prosecution of theft is almost beyond the imagination of this Court. However, this is the scheme for which defendant was convicted, and upon which he fraudulently received monies from numerous victims. Therefore, it is the conclusion of this Court that an upward departure is warranted.
Having determined that an upward departure is appropriate, the Court must tackle the more difficult task of figuring the amount of the departure. This is an issue which has been sadly neglected by the Commission and is nowhere mentioned in the guidelines. See United States v. Kikumura, 918 F.2d 1084, 1111 (3d Cir.1990) (citation omitted). What is clear, however, is that the Court, upon deciding to upwardly depart, may not simply ignore the guidelines. Id. at 1112 (citation omitted). Rather, in determining the amount of an upward departure pursuant to U.S.S.G. § 5K2.0, the Court is guided by a reasonableness standard. Id. at 1110. Because the “[djistrict courts are in the front lines, sentencing flesh-and-blood defendants ... they are entitled to ‘a substantial amount of discretion’ in determining the extent of any departure.” Id. (citations omitted). The Third Circuit, in Kikumura, suggested that analogic reasoning is one way to assess the reasonableness of a departure.[4] Id. at 1112-13. The Court also recognized, however, that this reasoning may not always apply, and that other methodologies may be developed by the district courts. Id. at 1113.
In the case at bar, the Court finds that an upward departure of three levels is appropriate. Defendant’s scheme to fake a debilitating injury in order to avoid criminal prosecution for theft is an aggravating factor which is not taken into account in the guidelines. Application Note 10(a) to the fraud guideline acknowledges that a departure is warranted when the fraud caused nonmonetary harm. U.S.S.G. § 2F1.1, comment, (n. 10(a)). Here, defendant’s fraud caused not only monetary harm to the Social Security Administration and Prudential Insurance Company, but also caused nonmonetary harm to the Department of Justice by preventing it from prosecuting a crime. This type of harm is not accounted for in the fraud guideline, see U.S.S.G. § 2F1.1, and is analogous to obstruction of justice.
Obstruction of justice is considered by the guidelines in two sections. First, § 3C1.1 provides for an increase of two levels “[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense....” U.S.S.G. § 3C1.1. While the Court notes that defendant did not attempt *337 to impede the Government in the prosecution of the mail fraud charge, defendant’s mail fraud was designed to frustrate the Government’s ability to prosecute him for the theft at Newark Airport.
In addition, section 2J1.2(b)(2) mandates an increase of three levels when a defendant’s obstruction of justice “resulted in substantial interference with the administration of justice.” U.S.S.G. § 2J1.2(b)(2). As discussed above, the motive for defendant’s commission of the mail fraud was his desire to avoid prosecution for theft. Therefore, defendant’s charade not only interfered with the Government’s ability to prosecute him, but actually permanently prevented it.[5] Such actions were clearly not envisioned by the Commission when preparing the guidelines; thus, they must be taken into account through an upward departure. The Court, therefore, finds that an upward departure of three levels is reasonable.
3. § 5K2.9
Alternatively, the Government asserts that an upward departure is appropriate under U.S.S.G. § 5K2.9. This section provides: “If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant’s conduct.” U.S.S.G. § 5K2.9.
Because the Court has taken into account defendant’s deceit on the Government and avoidance of criminal prosecution in the context of U.S.S.G. § 5K2.0, the Court will not do so under this section. Accordingly, the Court will not upwardly depart pursuant to U.S.S.G. § 5K2.9.
4. § 4A1.3(d)
As a final alternative justification for an upward departure, the Government asserts that defendant’s criminal history category is not accurately reflected by the guidelines. Section 4A1.3(d) provides:
If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant’s past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
* * * * * *
(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.
U.S.S.G. § 4A1.3(d).
As stated above, because the Court has considered defendant’s deceit on the Government and avoidance of criminal prosecution in the context of U.S.S.G. § 5K2.0, the Court will not do so under this section. Accordingly, the Court will not upwardly depart pursuant to U.S.S.G. § 4A1.3(d).
5.§ 3B 1.1(c)
Additionally, the Government moves for an upward departure based on defendant’s role as a manager or supervisor of the crime. Section 3Bl.l(e) of the U.S.S.G. provides for an increase by two levels “[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity.” U.S.S.G. § 3Bl.l(c). “This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (ie., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense.” Id., comment, (backg’d) (emphasis in original). In determining the defendant’s role, the Court must consider:
the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.” Id., Application Note 4. Enhancement is only *338 proper if the defendant controlled and directed at least one other person.
United States v. Bethancourt, 65 F.3d 1074, 1081 (3d Cir.1995) (citation omitted), cert. denied, — U.S. -, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996).
According to the Government, defendant controlled and conducted Messrs. Cannara and Stridacchio to aid him in his scheme to feign the accident. On the other hand, defendant argues that these gentleman were willing participants, who were splitting the money evenly with defendant, and who had extensive criminal histories of their own. Accordingly, defendant asserts that the Government has not, and cannot, prove by a preponderance of the evidence that defendant was the leader or manager of the scheme.
The Court finds that the Government has proven by a preponderance of the evidence that defendant masterminded, planned, and controlled the mail fraud. Defendant concocted the lumberyard accident in order to avoid criminal prosecution for the Newark Airport theft. Although the plan envisioned the three cohorts sharing the money equally, defendant had the most to gain by avoiding prosecution. Defendant recruited Cannara and Stridacchio; he signed the false insurance and benefit forms; and, most importantly, faked the debilitating injury for years. See, e.g., United States v. Felton, 55 F.3d 861, 865-66 (3d Cir.1995); United States v. Hunter, 52 F.3d 489, 492 (3d Cir.1995). The Court has no doubt that but for defendant’s initiation, control, and supervision, the crime could not have been committed. Accordingly, a two-level increase in the applicable guideline range is appropriate pursuant to U.S.S.G. § 3Bl.l(e).
II. Probation Recommendation
The Probation Office recommends a three-level enhancement pursuant to U.S.S.G. § 2J1.7. Section 2J1.7 provides: “If an enhancement under 18 U.S.C. § 3147 applies, add 3 levels to the offense level for the offense committed while on release as if this section were a specific offense characteristic contained in the offense guideline for the offense committed while on release.” U.S.S.G. § 2J1.7.
Defendant argues that § 2J1.7 is inapplicable for a number of reasons. First, defendant asserts that he was not given notice that he would receive an enhancement under this section until three days before sentencing. See Id., comment, (backg’d) (stating that “sufficient notice [must be given] to the defendant by the government or the court”). However, the Third Circuit has held that a defendant does not have a right to receive explicit notice of the possibility of sentence enhancement under § 3147. United States v. Di Pasquale, 864 F.2d 271, 280-81 (3d Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); United States v. Bertoli, 854 F.Supp. 975, 1149-50 & n. 252 (D.N.J.), aff'd in part & vacated in part on other grounds, 40 F.3d 1384 (3d Cir.1994); accord United States v. Browning, 61 F.3d 752, 756-57 (10th Cir.1995); but see United States v. Onick, 889 F.2d 1425, 1433 (1989), reh’g denied, 894 F.2d 1335 (5th Cir.1990); United States v. Cooper, 827 F.2d 991, 994-95 (4th Cir.1987).
Defendant attempts to distinguish the instant case from Di Pasquale. Defendant argues that, unlike sentencing schemes which are part of a particular crime charged, e.g., Armed Career Criminal Act, § 3147 is not directly tied to any particular statute. Hence, defendant posits that “[b]ecause it is enhancement of the defendant’s status (i.e., on bail) rather than aggravated conduct in the instant offense (ie., sale of narcotics resulting in death) or prior criminal history, the government should be required to notice a defendant prior to a plea or trial if it seeks such an enhancement.” Def.Br. at 3.
The Court disagrees. Because sentencing enhancements need not be pled or proven at trial, as defendant concedes, there is no need for notice to be provided before trial. A defendant is notified of the enhancement through the presentence report. Accordingly, a defendant has an adequate opportunity before sentencing to challenge the enhancement. See Browning, 61 F.3d at 756-57.
Alternatively, defendant opposes the enhancement because he asserts he was not *339 subject to bail at the time the fraudulent mailings occurred. The Court finds otherwise. Although the false documents were not mailed until July of 1990 and later, after the original indictment was dismissed, defendant feigned his injury only a few days after he was indicted for the theft at Newark Airport. The jury found that defendant faked his injury; such fakery began with the concocted accident in the lumberyard prior to his arraignment.
Finally, defendant challenges the imposition of the enhancement under U.S.S.G. § 2J1.7 on the grounds that it constitutes double counting. Defendant argues that any previous wrongful conduct was part and parcel of the Indictment upon which he was convicted. In essence, defendant asserts that his conviction included the deceit on the Government and, therefore, is already taken into account in the sentencing guidelines.
The Court disagrees. Defendant was convicted on three counts of mail fraud, i.e., falsely mailing insurance and Social Security claims. The deceit on the Government — the feigned accident — was merely the motive for which defendant engaged in his criminal activity. Therefore, employing the enhancement pursuant to U.S.S.G. § 2J1.7 does not subject defendant to double punishment. Hence, the Court will employ the three-level enhancement in accordance with U.S.S.G. § 2J1.7.
III. Downward Departure
Finally, defendant moves for a downward departure pursuant to U.S.S.G. § 5K2.0. See United States v. Monaco, 23 F.3d 793, 798-99 (3d Cir.1994) (holding downward departure appropriate where loss table in U.S.S.G. § 2F1.1 overstated criminality because defendant’s actions were not the sole cause of the actual loss, e.g., corporate takeover and bankruptcy). Defendant argues that because the monies which were paid by Prudential Insurance Company to the medical personnel ($217,567.00) did not benefit him, he should only be sentenced for the Social Security benefits which he illegally received ($107,662.80). Accordingly, defendant asserts that an adjustment must be made pursuant to the monetary table set forth in U.S.S.G. § 2F1.1.
Defendant is incorrect in his assumption that he can only be punished to the extent he enriched himself. Rather, the Court must focus on the extent of the harm inflicted by the defendant on his victims. United States v. Kopp, 951 F.2d 521, 535-36 (3d Cir.1991). Similarly, “if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.” U.S.S.G. § 2F1.1, comment, (n. 7). Hence, a downward departure is unwarranted.
CONCLUSION
For the foregoing reasons, defendant’s motion is DENIED, and plaintiffs motion is GRANTED IN PART AND DENIED IN PART. Accordingly, the Court will upwardly depart three levels pursuant to U.S.S.G. § 2J1.7, three levels pursuant to U.S.S.G. § 5K2.0, and two levels pursuant to U.S.S.G. § 3Bl.l(c), for a total enhancement of eight levels.
An appropriate Order accompanies this Opinion.

ORDER

This Matter comes before the Court on the parties’ cross-motions for departures from the United States Sentencing Guidelines (“U.S.S.G.”), and the Court having heard testimony and oral argument on August 7, 1996, and having considered the matter and the submissions of the parties, and for the reasons more fully explained in the accompanying Letter Opinion, and for good cause having been shown,
IT IS on this 5th day of September, 1996,
ORDERED that defendant’s motion for a downward departure pursuant to U.S.S.G. § 5K2.0 is DENIED, and it is further
ORDERED that the Government’s motion for upward departures pursuant to U.S.S.G. §§ 1B1.3, 5K2.9, and 4A1.3 are DENIED, and it is further
ORDERED that the Government’s motion for an upward departure pursuant to U.S.S.G. § 5K2.0 is GRANTED, and there *340 fore the Court will apply a three-level enhancement, and it is further
ORDERED that the Government’s motion for an upward departure pursuant to U.S.S.G. § 3Bl.l(c) is GRANTED, and therefore the Court will apply a two-level enhancement, and it is further
ORDERED that the recommendation of the Probation Office for an upward departure pursuant to U.S.S.G. § 2J1.7 is ADOPTED, and therefore the Court will apply a three-level enhancement.

. The Indictment asserted that defendant, and coworkers from Eastern Airlines, employed a complicated scheme to steal sealed mail which was being transported on an airplane. Defendant’s alleged role in the theft required that he place the container of mail at a certain location on the aircraft. This positioning of the container allowed a coworker, hiding in the cargo section of the airplane, to access the mail during the flight.

. Pursuant to U.S.S.G. § 2Fl.l(b)(l)(K), an increase of 10 levels is added to the base level of 6 when more than $500,000 has been lost.

. The Third Circuit has not addressed the issue of the relevancy of conduct for a general departure under U.S.S.G. § 5K2.0. The Court recognizes the dicta in United States v. Kikumura, and finds that it does not prevent this Court from making an opposite finding. 918 F.2d 1084, 1105 n. 24 (3d Cir.1990). In Kikumura, the Court acknowledged that the Second Circuit does not require the same stringent relevancy connection to depart under U.S.S.G. § 5K2.0 as is required under U.S.S.G. § 1B1.3. Id. (citing Kim, 896 F.2d at 683-84). However, the Third Circuit specifically stated that because its case was distinguishable on the facts, it would not consider the issue. Id.
This Court finds that to require the conduct necessary for a general departure to be as relevant as that needed for a departure under U.S.S.G. § 1B1.3 would diminish, if not eliminate, the need for § 5K2.0. Accordingly, the Court concludes that where unique factual circumstances warrant departure under § 5K2.0, misconduct related to the actions upon which defendant was convicted is sufficient.

. This requires the sentencing court to compare the defendant’s conduct with that of another crime listed in the guidelines. Id. Once found, the district court can upwardly depart to the maximum level afforded by that section. Id.

. Defendant’s actions tricked the Government into dismissing the theft Indictment, and the Government did not learn of defendant's wrongdoing until the statute of limitations had expired.