**DIRECTV, INC., Plaintiff,**

v.

**DECROCE, et al., Defendants.**

**Civil Action No. 03–5199.**

United States District Court, D. New Jersey.

Aug. 19, 2004.

David A. Cohen, Saiber, Schlesinger, Satz & Goldstein, LLC, Newark, NJ, for Plaintiff.

OPINION

HAYDEN, District Judge.

Plaintiff DirecTV, Inc. ("DirecTV") has filed another motion for default judgment

seeking statutory damages, costs, attorneys' fees, and injunctive relief for alleged violations of 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a), and 18 U.S.C. § 2512(1)(b). The basis is DirecTV's claim that defendant Nick Keal purchased and used pirate descrambling equipment to intercept DirecTV's satellite television programming without authorization. Similar lawsuits regularly are filed in this district and others, and DirecTV has been successful in obtaining the type of relief sought in the present application.

Prompted by a growing concern over the magnitude of the damages requested, the Court *sua sponte* has undertaken a close examination of the statutes involved. It must be noted that in this Court's experience these lawsuits either quickly are settled for unspecified sums, or are presented to the Court in the context of a default judgment application, exactly like the present one, that does not subject DirecTV's claims to the rigors of the adversary system. As a result, the question whether all of these statutes were intended to apply in this particular context has not arisen. There is good reason to ask that question if, as appears to be the case, the United States district courts regularly are being asked to act as a rubber stamp.

After careful review, the Court holds that while DirecTV properly can maintain a claim for a violation of 47 U.S.C. § 605(a), it has no private cause of action for violations of 18 U.S.C. § 2511(1)(a) or 18 U.S.C. § 2512(1)(b) based on the conduct alleged in the complaint. Accordingly, DirecTV's motion for default judgment is granted in part and denied in part.

## I. BACKGROUND

DirecTV filed this lawsuit on October 31, 2003, against five defendants, including Keal. The complaint alleges that Keal purchased pirate descrambling equipment and used it to intercept and receive DirecTV's satellite television programming without authorization in violation of 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a), and 18 U.S.C. § 2512(1)(b). (Compl.¶¶ 3, 8, 16, 20, 24.)

The Clerk of Court entered default against Keal for failure to answer or otherwise respond to the complaint. DirecTV now seeks default judgment against Keal pursuant to Rule 55(b), and requests that the Court award injunctive relief, costs, reasonable attorneys' fees, and statutory damages of $10,000.

## II. STANDARD OF REVIEW

By virtue of his default, Keal has admitted the factual allegations of the complaint, except those related to the amount of damages. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58–59 (3d ed.1998). But the Court need not accept DirecTV's legal conclusions, because "[e]ven after default [ ] it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* § 2688, at 63.

## III. DISCUSSION

### A. 47 U.S.C. § 605(a) claim

47 U.S.C. § 605 is part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934. Section 605 states, in relevant part:

**(a) Practices prohibited**

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or

meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto....

[47 U.S.C. § 605(a).]

The Third Circuit has interpreted Section 605(a) as providing liability for cable pirates who directly intercept satellite transmissions. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 200 (3d Cir.2001).

■ By operation of his default, Keal admits that he used a pirate descrambling device to intercept DirecTV's satellite television programming. That admission affords a basis for the Court to conclude that Keal violated Section 605(a), entitling DirecTV to default judgment on its Section 605(a) claim. *See TKR Cable*, 267 F.3d at 200.

Pursuant to Section 605(e)(3)(B)(iii), a party prevailing on a Section 605(a) claim is entitled to recover full costs, including reasonable attorneys' fees. The Court, in its discretion, also may grant injunctive relief, and award actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(B)(i-ii), (C). DirecTV has elected to seek statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) permits the Court to award statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just."

■ The Court awards to DirecTV attorneys' fees in the amount of $683.97, which sum the Court finds reasonable, and its costs in the amount of $72.02. The Court also grants DirecTV's request for injunctive relief.

■ As to damages, the record establishes that Keal purchased one pirate device on October 23, 2001. (Compl. ¶ 8; *see also* Certification of David A. Cohen Ex. A.) Aside from potentially receiving DirecTV's satellite television programming free of charge for an unspecified period of time, there is no indication that Keal otherwise profited from his conduct. Coupled with the injunctive relief and the award of attorneys' fees and costs, the Court finds that the minimum statutory damages award of $1,000.00 will compensate DirecTV adequately for any loss it suffered,

punish defendant for his alleged wrongdoing, and serve as a sufficient deterrent to defendant and others. Other courts have awarded the same amount of damages under comparable circumstances. *See, e.g., DirecTV, Inc. v. Malizie,* Civ. No. 03–403S, 2004 WL 1682827, *3–4 (W.D.N.Y. Mar. 15, 2004) (granting default judgment and awarding minimum statutory damages of $1,000 for violation of Section 605(a) where complaint alleged that defendant purchased a pirate device and intercepted DirecTV's satellite television programming); *DirecTV, Inc. v. Albright,* No. Civ. A. 03–4603, 2003 WL 22956416, at *3 (E.D.Pa. Dec. 9, 2003) (same).

## B. 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2512(1)(b) claims

18 U.S.C. § 2511 and 18 U.S.C. § 2512 are part of the Electronic Communications Privacy Act, which commonly is referred to as the Wiretapping Act. *See Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999). The Wiretapping Act imposes *criminal* liability for a variety of conduct, including intentional interception of any wire, oral, or electronic communications, *see* 18 U.S.C. § 2511(1)(a), and possession of any electronic, mechanical, or other device with knowledge "that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce," *see* 18 U.S.C. § 2512(1)(b).

DirecTV maintains that pursuant to 18 U.S.C. § 2520, it is authorized to pursue *civil* relief for violations of Sections 2511(1)(a) and 2512(1)(b). (*See* Pl.'s Br. at 5.) Section 2520 states, in relevant part:

(a) In general.—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

[18 U.S.C. § 2520(a).]

### 1. *Section 2512(1)(b)*

■ Section 2520(a) expressly authorizes a civil action to be commenced by any person whose "electronic communication *is intercepted*" in violation of the Wiretapping Act. 18 U.S.C. § 2520(a) (emphasis added). Section 2520(a) thus creates a remedy for those individuals who actually have been victimized by the theft of their electronic communications. The phrase "to recover from the person ... which engaged in *that* violation," *id.* (emphasis added), demonstrates Congress's intent to limit civil liability under Section 2520(a) to the class of defendants who actually intercepted a communication, and not to extend liability for mere possession of pirate devices. Based on the plain language of Section 2520(a), the Court finds that DirecTV does not have a private right of action against an individual for possessing a pirate descrambling device in violation of Section 2512(1)(b).

The foregoing analysis is consistent with *DIRECTV, Inc. v. Treworgy,* 373 F.3d 1124, 1126–29 (11th Cir.2004), where the Eleventh Circuit expressly held that "Congress did not create a private right of action against persons in possession of access devices in violation of section 2512(1)(b)." Cases cited in DirecTV's brief have held otherwise (*see* Pl.'s Br. at 6–11), but the Court finds *Treworgy* persuasive and adopts its reasoning.

Absent a private right of action, DirecTV lacks standing to pursue a civil remedy for a violation of Section 2512(1)(b).

Accordingly, DirecTV's Section 2512(1)(b) claim is dismissed.

### 2. Section 2511(1)(a)

Whether DirecTV can assert a civil claim pursuant to Section 2520(a) for a violation of Section 2511(1)(a) based upon the conduct alleged in the complaint presents a closer question. At first blush, Keal's interception of DirecTV's satellite television programming without authorization appears to fit within Section 2511(1)(a)'s prohibition against intentionally intercepting electronic communications. However, the legislative history of the Wiretapping Act, reported case law, and a comparison of the damages provisions of Section 605 and Section 2520, all indicate otherwise.

■ In reviewing the Wiretapping Act's legislative history, the Third Circuit has noted that "Congress [ ] focused on privacy in adopting 18 U.S.C. § 2511." *Bartnicki*, 200 F.3d at 122 (discussing Senate Report describing the purposes of the Wiretapping Act). While acknowledging that Congress did not define the privacy interest that it intended the Wiretapping Act to protect, the Court noted

> [a]s commonly understood, the right to privacy encompasses both the right "to be free from unreasonable intrusions upon [one's] seclusion" and the right to be free from "unreasonable publicity concerning [one's] private life." *Fultz v. Gilliam*, 942 F.2d 396, 401 (6th Cir. 1991); *see also Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Paul P. v. Verniero*, 170 F.3d 396 (3d Cir.1999). The Sixth Circuit has opined that "[t]he prohibitions Congress incorporated into section 2511(1) of [the Wiretapping Act] protect both these interests first, by prohibiting the surreptitious interception of private communications in the first instance—a highly

offensive physical intrusion on the victim's private affairs—and second, by circumscribing the dissemination of private information so obtained." *Fultz*, 942 F.2d at 401 (footnote omitted).

[*Bartnicki*, 200 F.3d at 122.]

That description of the wrong and the wronged is distinguishable from piracy of a commercial service. The following excerpt of the Congressional Record is also instructive:

> The private viewing of *satellite cable programming*, network feeds and certain audio subcarriers will continue to be governed *exclusively* by section 705 of the Communications Act [47 U.S.C. § 605], as amended, and *not* by chapter 119 of title 18 of the United States Code [18 U.S.C. §§ 2510 to 2522].

> [132 Cong. Rec. S. 14441 (Oct. 1, 1986) (emphasis added).]

Thus the Wiretapping Act's legislative history supports the conclusion that when it passed Section 2520, Congress did not intend to create a private right of action for a violation of Section 2511(1)(a) based on the unauthorized interception of satellite television programming.

That conclusion is buttressed by reported decisions in civil actions alleging violations of the Wiretapping Act. These cases generally involve traditional invasions of *personal* privacy, such as the surreptitious interception of private communications. *See, e.g., Bartnicki*, 200 F.3d 109 (involving interception of cellular telephone conversation); *Pascale v. Carolina Freight Carriers Corp.*, 898 F.Supp. 276 (D.N.J.1995) (Lifland, J.) (involving employer's recording of employees' personal telephone conversations). Other than cases in which DirecTV was a litigant, the Court's research did not uncover any reported cases in which a plaintiff sought to utilize a violation of the Wiretapping Act as a basis

to recover civil damages for a *commercial* injury like the one involved here.

Finally, there is a stark contrast between the damages provisions of Section 605 and Section 2520. Section 605(e)(3)(B) permits the Court to award damages for a violation of Section 605(a) in its discretion. The aggrieved party has an option—it can seek either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). If the party elects statutory damages, the Court can award between $1,000 and $10,000 "as the Court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court can decrease the award of statutory damages to as little as $250 if the Court "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of [Section 605(a).]" 47 U.S.C. § 605(e)(3)(C)(iii). Similarly, the Court can increase the award of statutory damages by as much as $100,000 if the Court finds "that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Thus, Section 605(e)(3)(C) vests the Court with considerable latitude in fashioning an appropriate and fair damages award tailored to the specific facts of each case.

Like Section 605(e), Section 2520 makes an award of damages discretionary. *See* 18 U.S.C. § 2520(c)(2) ("the court *may* assess as damages ...") (emphasis added); *see also DIRECTV v. Brown,* 371 F.3d 814, 818 (11th Cir.2004) (holding that an award of damages under Section 2520(c)(2) is discretionary). But the similarities end there. Once the Court elects to award damages under Section 2520, the Court is strictly curtailed regarding the *amount* of damages. The Court must award *the greater of* (1) actual damages, (2) statutory damages of $100 a day for each day of violation, or (3) statutory damages of $10,000. *See* 18 U.S.C. § 2520(c)(2). This

means that, as a practical matter, if the Court determines that damages are appropriate, the Court *cannot* award less than $10,000 regardless of how trivial the transgression might be. Depending upon the extent of the violation, a damages award could reach a draconian level totally disproportionate to the harm actually suffered.

Assume that Keal intercepted DirecTV's satellite television programming for just one day. Under Section 2520, the Court would have to award DirecTV either $10,000, or nothing at all. It could not, according to the statutory framework, award an amount in between. Similarly, if the Court were to assume that Keal began intercepting DirecTV's programming soon after he purchased the pirate device in October 2001 and continued doing so until the date of this Opinion, the Court would have to award DirecTV nothing at all, or over $100,000.00. In either scenario, the Court is faced with awarding excessive damages or awarding nothing at all.

Congress could not have intended these two very different damages provisions to afford a simultaneous remedy for the unauthorized interception of satellite television programming. Section 605(e) is Congress's deliberate response to the problem of satellite television piracy. The statute offers a flexible approach in fashioning sanctions and providing remedies. Applying the rigid and punitive framework of Section 2520(c) here would render Section 605 superfluous and would force the Court to yield to creative lawyering over common sense.

In view of the legislative history of the Wiretapping Act, the reported case law, and the significant differences between the damages provisions of Section 605 and Section 2520, the Court concludes that DirecTV has no private right of action under Section 2520(a) based on Keal's unautho-

rized interception of DirecTV's satellite television programming. Accordingly, the Section 2511(1)(a) claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, DirecTV's motion for default judgment is denied as to its Section 2511(1)(a) and 2512(1)(b) claims, and those claims are dismissed with prejudice. The motion for default judgment is granted as to the Section 605(a) claim. DirecTV is awarded statutory damages in the amount of $1,000.00, costs in the amount of $72.02, and attorneys' fees in the amount of $683.97. Defendant Keal is permanently enjoined from intercepting and receiving DirecTV's satellite television programming without authorization, and from otherwise violating 47 U.S.C. § 605(a). The Court will enter an appropriate Order.