

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2005

# DIRECTV Inc v. Pepe

Precedential or Non-Precedential: Precedential

Docket No. 04-4333

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"DIRECTV Inc v. Pepe" (2005). *2005 Decisions.* Paper 19.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/19

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4333

———

DIRECTV INC, a California Corporation,

Appellant

v.

ROBERT F. PEPE; HUEY PHAM; ANTHONY PORPORA;
RONALD POWELL; GARY PRANZO; SEAN PRYCE;
CHRIS REUTER; ROBIN L. RICHARD;
WILLIAM ROACH; MIKE ROMANEK.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-02414)
District Court Judge: Honorable Katharine S. Hayden

———

No. 04-4471

———

DIRECTV INC, a California Corporation,

Appellant

v.

ANTHONY DE CROCE; NICK L. KEAL; BERNARD
KHUANG; LEONARD KORMAN; TOM TEAGUE.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-05199)
District Court Judge: Honorable Katharine S. Hayden

———

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2005

Before: RENDELL, FISHER, and VAN ANTWERPEN,
<u>Circuit Judges</u>.

(Filed: December 15, 2005)

Marc J. Zwillinger
Howard R. Rubin
Shane M. McGee
Sonnenschein Nath & Rosenthal LLP
Washington, D.C. 20005

        Attorneys for Appellant

John W. Gibson
Pittsburgh, PA 15219

        Attorney for *Amici Curiae Edward Semulka,*
        *Joseph Rodkey, Frank Pienkosky, Mark Livesky,*
        *Bennie Leto, Joseph S. Jarvis, Daniel Galbraith,*
        *Bruce Figler and Michael Gignarella*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>

1

In this consolidated appeal, we are asked to determine whether a private right of action under 18 U.S.C. § 2520 exists for violations of 18 U.S.C. § 2511(1)(a), which, as a joint civil-criminal provision of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-2521, imposes sanctions against anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication." Section 2520(a) provides for civil actions by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the ECPA. 18 U.S.C. § 2520(a). Specifically at issue are default judgments entered by the United States District Court for the District of New Jersey against the Appellees, who are alleged by Appellant DIRECTV, Inc. to have pirated its encrypted satellite television broadcasts. In those cases, the District Court concluded that §§ 2511(1)(a) and 2520(a) of the ECPA did not allow DIRECTV a cause of action. It did allow claims under § 705 of the Communications Act, 47 U.S.C. § 605, which proscribes the unauthorized reception of radio or wire signals.

On January 20, 2005, DIRECTV moved to consolidate its appeals in *DeCroce* and *Pepe*, and this Court granted the motion on February 2, 2005. In both cases, we have jurisdiction to review the final orders of the District Court under 28 U.S.C. § 1291.[1] For the following reasons, we will reverse the judgment of the District Court that no private right of action exists under 18 U.S.C. § 2520(a) for violations of 18

---

[1] DIRECTV did not immediately appeal the Order as to defendant Keal in *DeCroce*, but was compelled by Fed. R. Civ. P. 54(b) to await the dismissal of the final defendant in the case. Thereupon the Order became final and appealable. This Court requested that DIRECTV clarify the jurisdictional issue of the timeliness of its appeal. Because no final order existed until the last defendant was dismissed, we conclude that the appeal was timely filed, and that there is no jurisdictional defect.

U.S.C. § 2511(1)(a) where the defendant has, without authorization, intercepted a plaintiff's encrypted satellite television broadcast.

I.

These cases arise as part of a program of litigation undertaken by DIRECTV to deter the illegal interception of the company's encrypted satellite broadcasts. Because the cases arise from default judgments, we draw the relevant facts from the two Complaints that initiated each case presently before us.[2] *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The first Complaint named ten defendants, Robert F. Pepe, Huey Pham, Anthony Porpora, Ronald Powell, Gary Pranzo, Sean Pryce, Chris Reuter, Robin L. Richard, Winston Roach, and Mike Romanek; DIRECTV filed it on May 23, 2003 ("*Pepe*"). The second Complaint, filed on October 31, 2003, named five: Anthony DeCroce, Nick L. Keal, Bernard Khuang, Len Korman, and Tom Teague ("*DeCroce*"). Both complaints allege that the defendants separately purchased devices which could enable them to intercept and decode DIRECTV's satellite transmissions. While DIRECTV refers to these items as "Pirate Access Devices," they consist of different designs and functions, and are variously known as unloopers, bootloaders, emulators, and access card "programmers."

DIRECTV made the same substantive legal claims in

---

[2] We pause to decline the request of *Amici* that this Court find the defendants in *DeCroce* and *Pepe* were improperly joined under Fed. R. Civ. P. 20(a). *Amici* cannot raise issues not raised by the parties below. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 61 n.2 (1981). Furthermore, without the presence of the adverse parties to raise the issue of improper joinder, we must treat it as waived. *See, e.g., Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 192 (3d Cir. 2005) (arguments not raised in party's opening brief to Court of Appeals waived).

both Complaints.  It asserted first that the "[d]efendants have received and/or assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a) [§ 705 of the Communications Act]."  App. 70 & 83.  Section 605 provides a civil remedy for the unauthorized use or publication of various wire or radio communications, including encrypted satellite broadcasts.  *See* 47 U.S.C. § 605.  Second, DIRECTV claimed that "[b]y using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming,[3] defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. § 2511(1)(a)."  App. 71.  As discussed, § 2511(1)(a) prohibits the intentional and unauthorized interception of "electronic communication[s]."  Third, DIRECTV alleged that "[d]efendants possessed and used Pirate Access Devices, knowing or having reason to know that the design of such devices render then primarily useful for the purpose of surreptitious interception[4] of DIRECTV's satellite transmissions of television programming, and that such devices, or any component thereof, have been or will be sent through the mail or transported via interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b)."  App. 72 & 85.  Section 2512(1)(b) criminalizes the manufacture, assembly, possession, or sale of so-called "Pirate Access Devices" in interstate or foreign commerce.  With each claim, DIRECTV alleged that it suffered lost revenue, breach of its security and accounting systems, infringement of its

---

[3] The *Pepe* Complaint refers to these as "satellite television transmissions."  The difference is immaterial.  App. 84.

[4] Section 2510(4) of the ECPA defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

4

proprietary information and trade secrets, and interference with business relations. On these bases, it sought damages, attorneys fees, costs, and injunctive relief.

When defendant Keal made no response to its October 31, 2003 Complaint in *DeCroce*, DIRECTV moved for a default judgment against him on all three counts.[5] On August 19, 2004, the District Court granted default judgment as to the first claim, brought under 47 U.S.C. § 605(a). *DirecTV v. DeCroce*, 332 F. Supp. 2d 715, 718 (D.N.J. 2004). Based on that claim, it permanently enjoined Keal from unauthorized interception of DIRECTV's satellite television programming and entered a judgment against him for damages in the amount of $1,755.97, reflecting statutory damages, costs and attorney's fees. *Id*. The Court dismissed with prejudice the claims under §§ 2511 and 2512 of the ECPA. *Id*. at 722. It noted that while the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment, legal issues remain subject to its adjudication.[6] *Id*. at 717. It concluded

_____

[5] DIRECTV moved for and obtained defaults against Keal and DeCroce, but pursued default *judgment* against Keal only. Of the five defendants named in this Complaint, DIRECTV pursued default judgment against Keal only. No defendant has participated in this appeal.

[6] Where a court enters a default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)) (quotations omitted). In a related vein, the District Court raised an important concern:

> Prompted by a growing concern over the magnitude of the damages requested, the Court *sua sponte* has undertaken a close examination of

that neither § 2511 nor § 2512 provided DIRECTV with a basis for recovery. *Id*. at 722. DIRECTV then appealed the denial of its § 2511 claim to this Court, docket number 04-4471.

The earlier May 23, 2003 Complaint in *Pepe* followed a similar course, though the District Court ultimately issued its final order in that case after its final disposition of *DeCroce*. DIRECTV moved for default judgment against Pham and Richard, two defendants in that case. The record does not reveal the fate of the other defendants, except to the extent that the District Court docket shows that they were dismissed from the case. Recapitulating its reasoning in *DeCroce*, the District Court entered an Order on October 29, 2004, granting DIRECTV's motion for default judgment with respect to its claims under 47 U.S.C. § 605, but denying its claims under 18 U.S.C. §§ 2511 & 2512.[7] DIRECTV timely

<div style="margin-left: 2em;">

the statutes involved. It must be noted that in this Court's experience these lawsuits either quickly are settled for unspecified sums, or are presented to the Court in the context of a default judgment application, exactly like the present one, that does not subject DirecTV's claims to the rigors of the adversary system. As a result, the question whether all of these statutes were intended to apply in this particular context has not arisen. There is good reason to ask that question if, as appears to be the case, the United States district courts regularly are being asked to act as a rubber stamp.

</div>

*DirecTV v. DeCroce*, 332 F. Supp. 2d 715, 717 (D.N.J. 2004).

[7] On November 18, 2004, following DIRECTV's Notice of Appeal in *Pepe*, the District Court filed an Order Amplifying Prior Written Opinion Pursuant to L.A.R. 3.1. In that Order, the

appealed.

The Appellees in these cases have not filed briefs with this Court, apparently a continuation of their silence in the District Court. A group of individuals who are defendants in other cases brought by DIRECTV in other district courts of this Circuit have filed a brief as *amici curiae*, observing that our decision in this case will affect their interests in their own cases.

## II.

The sole issue for review is whether the District Court erred by determining that no private cause of action exists under 18 U.S.C. §§ 2511 and 2520.[8] We exercise plenary review over questions of statutory interpretation. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981). DIRECTV argues that it should be allowed to assert a claim for unauthorized interception of satellite television broadcasts against Appellees under these sections. We agree.

The District Court concluded that the legislative history of the ECPA, case law, and a comparison of the damages provisions of 47 U.S.C. § 605 and 18 U.S.C. § 2520, which admittedly overlap, all indicate that private claims cannot arise under § 2511(1)(a). In the view of the District Court, 47 U.S.C. § 605, provided DIRECTV's sole remedy.

---

District Court referenced and incorporated its reasoning in *DeCroce*.

[8] DIRECTV does not appeal the District Court's denials of its claims under § 2512, rooted in defendants' mere purchase or possession of unauthorized interception devices. We express no opinion as to the merits of District Court's denial of the § 2512 claims.

7

We find that the plain language of § 2511 compels the opposite result, a conclusion that is supported–not contradicted, as the District Court found–by the legislative history. Accordingly, we are constrained to reverse.

A.

As a threshold matter, we must decide whether DIRECTV's satellite television transmissions are "electronic communications" within the meaning of the ECPA. We hold that they are. The ECPA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). A television broadcast is self-evidently a "transfer of . . . signals," including, at the very least, images and sounds. The means of transmission is by radio wave from the satellite to a ground-based antenna. We conclude, therefore, that DIRECTV's satellite broadcasts are "electronic communications" as defined by the ECPA. Where our sister courts of appeals have considered the issue, they have reached the same conclusion. *See DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 225-26 (4th Cir. 2005); *United States v. One Macom Video Cipher II, SN A6J050073*, 985 F.2d 258, 261 (6th Cir. 1993); *United States v. Herring*, 993 F.2d 784, 787 (11th Cir. 1993); *United States v. Lande*, 968 F.2d 907, 909-10 (9th Cir. 1992); *United States v. Davis*, 978 F.2d 415, 417-18 (8th Cir. 1992); *United States v. Splawn*, 982 F.2d 414, 415-16 (10th Cir. 1992) (en banc).

B.

The plain language of § 2511(1)(a) and § 2520(a) compels us to conclude that private parties can bring a cause of action for damages and injunctive relief where aggrieved by a defendant's violation of § 2511(1)(a). Where we are called upon to interpret a statute, we must always begin with

its plain language. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Where "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" we cannot look further. *Id.* (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)).

Section 2511 provides in relevant part that "[e]xcept as otherwise specifically provided in this chapter any person who . . . intentionally intercepts . . . any . . . electronic communication" is subject to criminal penalties or civil suit by the federal government.[9] 18 U.S.C. § 2511(1)(a).[10] Appearing later in the same chapter, § 2520 expressly authorizes private suits by "any person whose . . . electronic communication is intercepted . . . in violation of this chapter."

---

[9] The civil suit provisions in § 2511(5) do not concern civil suits brought by private parties; rather, they enable the federal government to bring civil suits and to seek civil penalties for certain activities not at issue here, including the interception of unencrypted "private satellite video communication[s]" for legal, non-tortious purposes. Section 2520 addresses civil suits by private parties.

[10] Section 2511(1)(a) provides:

> (1) Except as otherwise specifically provided in this chapter any person who--
> > (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> . . . .
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2520(a).[11]  Both sections reference the interception of electronic communications.  The linguistic interlock between the two provisions could not be tighter, nor more obviously deliberate:  § 2511(1)(a) renders unlawful the unauthorized interception of electronic communications, including encrypted satellite television broadcasts, while § 2520(a) authorizes private suit against those who have engaged in such activities.

To illustrate the point, we observe that the ECPA excepts a number of activities from its reach; however, it nowhere provides an exception for the interception of electronic communications in the form of encrypted satellite television broadcasts.  For example, another subsection of § 2511 excludes interception of certain *unencrypted* satellite transmissions from its scope, but is silent on *encrypted* satellite television broadcasts:

> Conduct *otherwise an offense* under this subsection that consists of or relates to the interception of *a satellite transmission that is not encrypted or scrambled* and that is transmitted--
>
> > (i) to a broadcasting station for purposes of retransmission to the

---

[11] Section 2520(a) provides in full:

> (a) In general.--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

general public; or

(ii) as an audio subcarrier intended for redistribution to facilities open to the public, but not including data transmissions or telephone calls,

is *not an offense under this subsection* unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.

18 U.S.C. § 2511(4)(b) (emphasis added). The clear implication, for present purposes, is that *encrypted* satellite transmissions are not excepted from § 2511. In § 2511(4)(b), Congress made express provision for "conduct otherwise an offense" under § 2511 relating to *unencrypted*, non-scrambled satellite transmissions to except it out of the general rule that such interceptions would indeed violate § 2511. *See Lande*, 968 F.3d at 909-10 (holding that § 2511(1) bars unauthorized interception of encrypted satellite television broadcasts because "no exception is 'specifically provided' for the unauthorized viewing of [such] signals").

Furthermore, as DIRECTV correctly observes, § 2511(1)(a) cannot be read to exclude the interception of encrypted satellite television broadcasts from its reach without rendering § 2511(4)(b) meaningless. When interpreting statutory language, we must, whenever possible, read the statute in such a manner as to give effect to every part of it. *Mountain States Tel. & Tel. Co. v. Santa Ana*, 472 U.S. 237, 249 (1985) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). Here, Congress included § 2511(4)(b) to provide a specific exception for the interception of certain unencrypted satellite transmissions where the purpose is neither commercial nor for private financial gain. To read § 2511(1)(a) as excluding from its reach the interception of satellite transmissions in general, encrypted or not, would be to obviate the need for a particularized exception for

11

*unencrypted* satellite transmissions.

Our conclusion that § 2511(1)(a) supports a civil claim comports with that of every other court of appeals to have considered the question. *See, e.g., DIRECTV Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005); *Nicholas*, 403 F.3d at 226. Having concluded that § 2511(1)(a) renders the interception of encrypted satellite television broadcasts unlawful, it is plain that § 2520(a), as discussed above, authorizes private suit for such activity: "any person whose . . . electronic communication is intercepted . . . in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate."

C.

Relying on the statute's legislative history, case law, and a comparison of the damages provisions in the ECPA and the Communications Act, the District Court concluded that 47 U.S.C. § 605 supplants a private cause of action under the ECPA's provision in 18 U.S.C. § 2511(1)(a) for the interception of encrypted satellite television broadcasts. As we will discuss, these considerations do not overcome the plain language of the statute, which controls our analysis.

1.

The District Court singled out an excerpt from the record of Senate debate on the ECPA to conclude that § 2511(1)(a) does not authorize private suit on the present facts:

> The private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by section 705 of the Communications Act, as amended, and not by chapter 119 of title 18 of the United States Code

12

[ECPA, 18 U.S.C. §§ 2510-2522].

132 Cong. Rec. S14441 (daily ed. Oct. 1, 1986) (statement of Sen. Leahy). Taken on its face, this statement does state that 47 U.S.C. § 605 would govern exclusive of the ECPA. Notwithstanding, however, that we are bound not by legislative history but by plain statutory language, the balance of the legislative history directly contradicts this view. On the same date, a colloquy between Senators Danforth and Mathias is squarely contrary:

> Mr. DANFORTH. This legislation covers some conduct that also is prohibited under section 705 of the Communications Act of 1934. *Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section 705 of the Communications Act?*

> Mr. MATHIAS. *That is correct.* This legislation is not intended to substitute for any liabilities for conduct that also is covered by section 705 of the Communications Act. Similarly, it is not intended to authorize any conduct which otherwise would be prohibited by section 705. *The penalties provided for in the Electronic Communications Privacy Act are in addition to those which are provided by section 705 of the Communications Act.*

> *As a general rule, conduct which is illegal under section 705 of the Communications Act would also be illegal under this bill. . . .*

> The exception to the general rule is that we do not provide liability for the noncommercial

> private viewing of unscrambled network feeds to affiliated stations by the owners of home satellite dishes. Accountability for that conduct will be determined solely under section 705 of the Communications Act. *The private viewing of any other video transmissions not otherwise excepted by section 705(b) could be subject to action under both the Communications Act and this legislation.*

132 Cong. Rec. S14441 (daily ed. Oct. 1, 1986) (colloquy of Sens. Danforth & Mathias) (emphasis added). Here, Sen. Mathias took pains to state, several times even, that § 705 of the Communications Act did not foreclose action under the ECPA. An exchange in the House of Representatives covered similar ground:

> Mr. MOORHEAD. [T]his legislation covers conduct that may be prohibited under section 705 of the Communications Act of 1934. *Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section 705 and other sections of the Communications Act?*
>
> Mr. KASTENMEIER. *That is correct.* This legislation is not intended to alter any rights or liabilities for conduct that also is covered by section 705 or other sections of the Communications Act. Similarly, it is not intended to authorize any conduct which otherwise would be prohibited by section 705 or other sections. It should be noted that we do not provide criminal liability for noncommercial, private viewing of unscrambled network feeds to affiliates by the owners of home satellite dishes. Accountability for that conduct will be

14

> determined solely under section 705 of the Communications Act. *The private viewing of any other video transmission not otherwise excepted by section 705(b) will be subject to action under both the Communications Act and this legislation.*

132 Cong. Rec. H8977 (daily ed. Oct. 1, 1986) (colloquy of Reps. Moorhead & Kastenmeier) (emphasis added). Like the colloquy cited above, this exchange unequivocally indicates that encrypted satellite transmissions are covered by both 47 U.S.C. § 605 *and* the ECPA, including 18 U.S.C. § 2511.

Based on a thorough reading of the legislative history as a whole, we cannot agree with the District Court's view that it supports the conclusion that the Communications Act provides DIRECTV's sole remedy for interception of its encrypted satellite television broadcasts.

## 2.

The District Court also reasoned that the damages provisions of the ECPA and the Communications Act were irreconcilable, and that because damages awards under the Communications Act afford the court more latitude than the ECPA, the latter act did not provide a cause of action for the unauthorized interception of satellite television broadcasts. We cannot agree with this line of reasoning: the only conclusion to be drawn from the differing damages provisions is that courts should generally disallow double recovery. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (courts should generally disallow double recovery). As we noted in our discussion of the legislative history *supra*, Congress intended that the damage provisions would not be mutually exclusive.

## 3.

15

In refusing to find a cause of action under § 2511(1)(a), the District Court also relied on the pro-privacy policy considerations underlying the ECPA as expressed in our opinion in *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999). In adjudicating the First Amendment questions at issue in *Bartnicki*, we noted that § 2511(1) protected victims from "the surreptitious interception of private communications" and "the dissemination of private information so obtained." 200 F.3d at 122. In this case the District Court took our language in *Bartnicki* to mean that § 2511(1) would apply only to wrongs against private persons, and not piracy against a commercial service such as DIRECTV.

Again, the plain language of the ECPA trumps other considerations, and compels an opposite conclusion. Section 2520(a) provides that "any *person* whose . . . electronic communication is intercepted . . ." can recover for violations of the ECPA. (Emphasis added.) In turn, § 2510(6) defines "person" to include "any individual, partnership, association, joint stock company, trust, or corporation." As a corporation, DIRECTV is a "person" within the meaning of the ECPA, and can therefore bring suit under it.

## III.

For the foregoing reasons, we conclude that Congress has made a private right of action available under §§ 2511(1)(a) and 2520 of the ECPA for the unauthorized interception of encrypted satellite television broadcasts. Accordingly, we reverse the District Court's Orders in both cases to the extent that they deny DIRECTV's claims under 18 U.S.C. §§ 2511(1)(a) and 2520(a), and remand both cases for further proceedings consistent with this opinion.

16