**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1077
_____

JAMES J. POLIDORO,
                              Appellant

v.

GERALD M. SALUTI

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-09-cv-06392)
District Judge:  Honorable Kevin McNulty

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2017
Before:  AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 10, 2017)
_____

OPINION[*]
_____

PER CURIAM

    The appellant, James J. Polidoro, appeals pro se from the District Court's order

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

granting in part and denying in part his motion for a default judgment in this legal malpractice diversity case. We will affirm.

## I.

In December 2009, Polidoro commenced this diversity action in the District Court against his former attorney, Gerald M. Saluti. See 28 U.S.C. § 1332. Polidoro stated that he had retained Saluti to pursue a civil rights suit on his behalf, but that Saluti neglected to file a complaint within the applicable statute of limitations.[1] Polidoro, raising claims of legal malpractice, negligence, breach of contract, and fraud, sought to recover both attorney's fees and the value of his intended civil rights suit. Polidoro properly served Attorney Saluti with a Summons and Complaint, but Saluti never entered an appearance or otherwise responded.

As a result of Saluti's failure to defend, Polidoro commenced proceedings under Rule 55 of the Federal Rules of Civil Procedure to obtain a default judgment against him.[2] The District Court ultimately determined that Polidoro was entitled to judgment

---

[1] As discussed further below, Polidoro hired Saluti to represent him in a civil rights action against various federal defendants relating to his 1999 conviction for a federal racketeering offense and his ensuing incarceration.

[2] This action lingered in the District Court for seven years. Polidoro filed his complaint in 2009. The matter was dismissed without prejudice in June 2011 pending completion of bankruptcy proceedings, and reopened in April 2012. In January 2013, the District Court directed Polidoro to move for default judgment, but he failed to do so and the court again dismissed the matter without prejudice. In December 2013, the District Court reopened it. Polidoro then filed an amended complaint, properly served it, and, in December 2014, moved for default judgment.

2

against Saluti on his legal malpractice claim under New Jersey law. With respect to damages, the District Court first ruled that Polidoro was entitled to the legal fees and expenses he paid to Saluti, which totaled $12,820.13. The District Court then considered the amount of damages Polidoro would have recovered had he been able to bring his intended civil rights suit. Upon review of the record, however, the District Court concluded that Polidoro's intended civil rights suit was wholly meritless. Therefore, the court assigned it only a nuisance value of $5,000.00.

Polidoro now seeks review of the District Court's damages determination. Polidoro contends that, contrary to the District Court's conclusion, his civil rights action would have succeeded, resulting in a $2 million award.[3]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[4] We review the District Court's damages calculation in a default judgment case for an abuse of discretion. See Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

## A.

In considering a motion for a default judgment under Rule 55(b)(2), a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount

---

[3] Appellee Saluti has not participated in this appeal.

[4] The Notice of Appeal initially appeared to be untimely, but the District Court subsequently extended the appeal period pursuant to Fed. R. App. P. 4(a)(5).

of damages. <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990). Rather, the plaintiff must prove that he is entitled to the damages sought. <u>Id.</u>; <u>DIRECTV Inc. v. Pepe</u>, 431 F.3d 162, 165 (3d Cir. 2005).

Under New Jersey law, a client seeking to recover damages against an attorney who failed to file suit within the applicable limitation period must "establish the recovery [that] the client would have obtained if malpractice had not occurred." <u>Frazier v. New Jersey Mfrs. Ins. Co.</u>, 667 A.2d 670, 676 (quoting <u>Osborne v. O'Reilly</u>, 631 A.2d 577, 579 (N.J. Super. L., 1993)). To do so, a plaintiff may "proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." <u>Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.</u>, 845 A.2d 602, 611–12 (N.J. 2004). Specifically, the plaintiff must show that, but for the malpractice or other misconduct, "(1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of such judgment." <u>Id.</u> (quoting <u>Hoppe v. Ranzini</u>, 385 A.2d 913, 917 (N.J. App. Div. 1978)).

In support of his request for damages, Polidoro asserted that he had retained Saluti to sue various federal defendants for their wrongful conduct relating to an error in the judgment recorded in his 1999 federal racketeering case. The criminal judgment at issue states that, on May 20, 1999, Polidoro pleaded guilty to conspiracy to commit "Extortion, Racketeering and Threats" based on his role as a loan collector in the North Jersey Faction of the Bruno-Scarfo Organized Crime Family. <u>See</u> 18 U.S.C. § 1962(d).

4

According to Polidoro, however, he never agreed to this plea; rather, he agreed to plead guilty only to "Collection of Extensions of Credit by Extortionate Means." Id. § 894. Polidoro explained to the District Court that, as a result of this error in the criminal judgment, the Bureau of Prisons (BOP) denied him admission to a boot camp program, placed him on "Central Inmate Monitoring" (CIM) status to separate him from certain other prisoners, and denied his request to serve his last five months in a halfway house. He also added complaints about the conditions of his confinement. Polidoro advised the District Court that he had intended to assert violations of numerous tort and civil rights laws, and had planned to name as defendants: the District Court; the U.S. Attorney's Office; U.S. Attorney Ron Wigler; the BOP; a number of BOP employees; and his criminal defense attorney.

The District Court carefully considered Polidoro's allegations against these federal defendants and concluded that he failed to establish that he would have won his civil rights suit. After confirming that there was no error in the criminal judgment,[5] the District Court explained that, whether he had asserted claims under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), the Federal Tort Claims Act (FTCA), or

---

[5] Polidoro's plea agreement states that he pleaded guilty to "Count One of the Indictment, . . . which charges the defendant with Racketeering Conspiracy (specifically Racketeering Acts 2, 6, 7, 8, and 21), in violation of 18 U.S.C. § 1962(d)." (D.N.J. Crim. No. 98-cr-560, ECF No. 66.) For purposes of the Sentencing Guidelines, Polidoro stipulated that the underlying racketeering activity is "loansharking." (Id. at p. 5.) The District Court reviewed the transcript of the plea hearing at length and confirmed that Polidoro understood the terms of his plea at that time.

New Jersey tort law, Polidoro would have faced numerous insurmountable obstacles to recovery. Accordingly, the District Court concluded that Polidoro would have recovered only the nuisance value of the suit if it had been pursued by a competent attorney.

B.

Upon review, we perceive no error in the District Court's determination that Polidoro would not have won his intended civil rights suit. The District Court issued a thorough and well-reasoned opinion, and we need not repeat its analysis here. For substantially the reasons stated by the District Court, we agree that the New Jersey District Court, the U.S. Attorney's Office, and the BOP (and its divisions) would not have been subject to suit under Bivens, see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001) (explaining that a Bivens action cannot lie against the federal government or its agencies), or the FTCA, see FDIC v. Meyer, 510 U.S. 471, 484-85 (1994) (stating that only the United States is a proper defendant under the FTCA). We further agree that the District Judge who presided over Polidoro's criminal case would have been immune from suit, see Mireles v. Waco, 502 U.S. 9, 11 (1991) (stating that judges are absolutely immune for actions taken in judicial capacity), as would AUSA Wigler, see Imbler v. Pachtman, 424 U.S. 409, 422-23 (1976) (stating that prosecutors are immune for actions taken in prosecutorial capacity).

We also agree with the District Court that Polidoro's purported claims against various BOP officers would have failed. First, to the extent that Polidoro intended to use Bivens to indirectly challenge the validity of his conviction, he would have been barred

6

from doing so under Heck v. Humphrey. 512 U.S. 477, 486-87 (1994) (holding that, in order to recover damages for an unconstitutional conviction or imprisonment, or for other harm by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been invalidated); see also Lora–Pena v. F.B.I., 529 F.3d 503, 505 n.2 (3d Cir. 2008) (per curiam) (noting that Heck has been applied to bar Bivens claims).[6]

Second, insofar as Polidoro sought to hold BOP officers liable for his belated transfer, security classification decisions, and the denial of admission to a boot camp or halfway house, they would most likely have been shielded from liability under the doctrine of qualified immunity because these actions do not violate any clearly established rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (explaining that government officials performing discretionary functions are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); see also Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that a prisoner's due process rights are violated only when he is deprived of a legally cognizable liberty interest, which

---

[6] Polidoro's claim that his defense attorney was negligent for failing to correct the error in the criminal judgment would also have been Heck-barred. See Grier v. Klem, 591 F.3d 672, 677 (3d Cir. 2010) (explaining that, under Heck, "a prisoner does not have a cognizable § 1983 claim, even if he or she does not seek relief from the fact or duration of confinement, for alleged unconstitutional conduct that would invalidate his or her underlying sentence or conviction unless that conviction has already been called into question").

occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

Lastly, we agree with the District Court that, for substantially the reasons stated in its opinion, Polidoro was not likely to succeed on his various objections to the conditions of his confinement. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (holding that conditions of confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities").[7]

## III.

We have reviewed Polidoro's remaining arguments on appeal and conclude that they are meritless. Therefore, we will affirm the District Court's judgment.[8]

---

[7] The District Court recognized that Polidoro also wanted Saluti to include in his lawsuit claims based on abusive behavior by prison personnel, such as Lieutenant Garraway's alleged June 24, 1999 "squeezing" of Polidoro's "genitals," and his threatening statement that he "used to abuse and torture the shit out of two guineas," and "loves abusing guineas." (Aff. in Support of Default J., ¶¶ 42, 43, ECF No. 55-1.) We add that any tort claims "for an injury to the person cause by the wrongful act[ or] neglect . . . of any person within [New Jersey]" would have been time-barred. See N.J. Stat. § 2A:14-2(a).

[8] To the extent that Polidoro argues that the District Judge should have recused himself, we see no request for recusal on the record. Furthermore, although Polidoro alleges that Judge McNulty served as a U.S. Attorney during that office's investigation into his case in the 1990s, we have held that "absent a specific showing that that judge was previously involved with a case while in the U.S. Attorney's office that he or she is later assigned to preside over as a judge, § 455(b)(3) does not mandate recusal." United States v. Di Pasquale, 864 F.2d 271, 279 (3d Cir. 1988).